The opinion of the Court was delivered by
Todd, J.
The defendants wore indicted and tried for the murder of one Robert Burton, the first named, ’ Alphonse, was convicted of manslaughter and sentenced to five years imprisonment, and tlie other to a life imprisonment at hard labor, in the penitentiary. From, these sentences they have appealed.
Bills of Exceptions in tlie record suggest errors in the rulings of the Judge presiding at the trial, complained of as follows :
1. The overruling the challenge to the array.
2. The alleged comment or remark of the Judge, during the course of the trial and in the presence of the jury, touching a question of fact.
3. The exclusion of a juror as incompetent on account of his declared scruples regarding the infliction of capital punishment.
4. The refusal of the Judge to permit a question to be answered by a juror sworn on his voir dire, touching his scruples as to the infliction of the death penalty.
5. To the admission in evidence of the confession of one of tlie accused; and
6. To the admission of the deposition of a deceased witness taken in the preliminary examination before the Recorder.
These we will proceed to discuss seriatim.
*12 i.
Challenge to the Array.
The facts on this point, as we gather from the record, are, substantially, as follows:
The case was tried in January, 1881.
On the 14th December, preceding, the Judge of the Criminal Court of Section B, parish of Orleans, under A.ct 93 of 1830, issued an order to the sheriff and jury commissioners to draw from the jury wheel three hundred names of persons, to constitute the grand and petit juries of the Court for the ensuing term thereof, in Januaiy.
The drawing took place on the I6th of December, under the order, and the names of the three hundred jurors were returned into Court as prescribed by the Statute.
Prom these three hundred, the grand jury was first drawn and empanelled, leaving two hundred and eighty-four remaining. Of this remainder, one hundred and thirty-four were attached to Section “A” of the Court to serve as petit jurors. Prom this last number the Judge of Section “A” qn’oceeded to select the jurors in conformity to Section 6 of the Statute, and excused for cause, all on the list but thirty-five names.
After thus proceeding, the Judge of Section “A” on the 3d of January, 1881, issued an'order to the jury commissioners and the sheriff, to draw forthwith from the jury wheel, fifty additional names, setting forth as a reason for the order, that this number “ was required to complete the jury panel for the January term.”
This additional drawing was effected, and the panel made up from these two drawings; and from this panel, and from talesmen subsequently called after the trial began, the jury was constituted that tried the case.
The alleged irregularities in these proceedings complained of, are two: First, that all the names composing the venire were not drawn fifteen days before the beginning of the term of Court, as required by law, and, if any single name appears on the panel, not so drawn, it justified a challenge to the entire array; and, secondly, that the jurors, from the first drawing, were not selected by the Judge of the Section in which they were to serve. This, we take to be the second ground of objection, though the language both of the bill and of the brief is not entirely clear on the point.
In regard to the first objection, the Statute referred to, Act 98 of 1880, does require that the number of jurors ordered to be drawn by the Court, shall be drawn fifteen days next preceding the beginning of the month in which the term of Court is to be held. This was done as *13 stilted above, but did not furnish — after selections had been made therefrom, and the list reduced in the manner shown — in the opinion of the Judge, a sufficient number to answer the requirements of the Court, and hence the fifty more ordered to meet the exigency. It is this order that is attacked as unwarranted, and the jurors drawn under it alleged tobe illegally drawn and incompetent to serve.
The-statute in question makes no provision for meeting the exigency that- arose in this case on the partial exhaustion of the panel, and evidently contemplated that sufficient jurors would be provided from the drawing prescribed at the time specified. It did not, .however, repeal all laws on the same subject matter, but only such laws and parts thereof, as were inconsistent with its provisions.
Act No. 138, extra session of 1877, provides: “ That whenever, on the trial of any criminal case in the Parish of Orleans, where the accused is charged with a felonious crime, * * * in the opinion of the Judge in the case fixed for trial, talesmen are, or will be required to complete the jury, the Judge shall enter an order directing the criminal sheriff to draw such number of tales jurors as iu the opinion of the Court may he necessary to complete the jury, from the jury wheel containing the jurymen, by the jury commissioners, etc.”
This Act evidently conferred authority on the Judge to render the order in question, audit was not repealed or impaired by the later Statute 98 of 1880, since the latter contains no provision in conflict with it, and the provisions of both Statutes can well stand together. And the ease having been fixed for trial when the order was made, it being certain or highly probable that the jurors first drawn would not be sufficient, for the appointed trial — as proved to he the case — the condition of things existed that justified the. Judge, and even made it his duty, to enforce the clause of the previous act referred to, to meet the emergency for which no adequate provision was made in Act 98 of 1880.
The second objection does not seem to he insisted on in argument, but if urged, it is enough to say, that the record, which we have referred to above, plainly shows that the jurors, after their allotment to Section A of the Court, were “ selected ” by the Judge of that Section; the selectiop consisting in revising the list, examining into the legal qualifications of those composing it, and rejecting therefrom all such as were disqualified.
YvTc find, therefore, that the objections urged to the drawing, selection and empanelling of the jury, were not well taken, and the challenge to the array properly overruled.
*14 ii.
Tlio facts relating to the alleged remark of the Judge, complained of are as follows :
One W. B. Stansbury was on the stand, under examination as a witness, and the matter of inquiry at the time seems to have been touching the identity of the prisoners; some question relating- to this subject had been asked by the counsel for the State and objected to by the defendant’s counsel, when the objection was made, the Judge remarked as follows: “ As the identity lias already been established in the”-
At this point the counsel for the defense interrupted and interposed the objection, that the Court had no right to i>ass on a question of fact, whereupon the Judge made the following statement, which we copy from the bill: “ The testimony of Rachel Burns, on the question of the identity of the prisoners, as contained in her deposition before the Recorder, was already given to the jury this morning. The Court expressly disclaims pronouncing any opinion as to the effect to be given to that testimony or even as to what that evidence was. The Court, in making these remarks, meant them as an intimation that the question now i>ropouuded to the witness' on the stand, as to the identity of the accused, by the same Rachel Bums, was of doubtful projnlety, and should not be put. These remarks were made on an objection raised by the defense to the question put to the witness. Counsel for the defense not permitting the Court to conclude its remarks, asserted that the Court had passed on the facts in the case, and insisted on immediately writing a bill of exception. Upon the above facts and remarks of the Court, defendants, through their counsel, objected, and reserved this their bill of exceptions, and tendered it to the Judge for signature.”
By the Court.
“ At the time of its interruption by counsel for the defense, the Court denied, and does now, that it expressed any opinion on any part of the evidence in this case; and afterwards told the jury emphatically, that the Court has no opinion to express on the evidence; that it was the province of the jury and not of the Court to determine what the evidence in the case was, and what effect should he given to it.”
Section 991, of the Revised Statutes of 1870, provides that “in charging the jury in criminal cases, the judge must limit himself to giving them a knowledge of the law applicable to the case. In doing- so, lie shall abstain from stating or recapitulating the evidence so as to influence their decisions on the facts. He shall not state or repeat to the jury *15 tlie testimony of any witness, nor shall he give any opinion as what facts have been proved or disproved.”
The language of the statute, construed according to its letter, would seem to limit the prohibition against the Judge making any remark or comment, touching the facts of a case, or evidence relating thereto,, to his final charge to jury; but this is not the spirit of law, and such comment, reference or allusion, at any stage of the trial, is opposed to our .system of criminal jurisprudence, as established not only in practice, but by constitutional provision, and we do not hesitate to declare that any expression of opinion by the Judge during the progress of the trial made in the presence of the jury, or out of their presence, is to be condemned; that it is the duty of the Judge to carefully abstain from such expression, both in ruling upon the admissibility of evidence and in his charge to the jury, and any clear, though hasty and inadvertent expression of opinion, touching any material fact developed by the evidence, might well be regarded as fatal to the proceedings.
Upon the point now under consideration, we must, however, judge of the matter, and form our conclusions from the entire record relating to the subject, and what do we find 9 In the first place, the remark complained of, is contained in a sentence uncompleted, broken off by the objection suddenly interposed. Wo» constat that, had the Judge finished the sentence, it would have justified the inference that any distinct reference was made, or opinion avowed, as to the existence or non-existence of any fact developed by the evidence. Besides, as part of the bill, we find the judge’s explanation, and his positive denial that any allusion was intended or any opinion expressed, relating to the question of fact or inquiry then before the Court. And, moreover, we have the Judge’s express disclaimer to the jury, made at the instant, that any such opinion was expressed, and his emphatic declaration to them that it was their province, and not the Court’s, to determine what the evidence was and what effect should be given to it! All this it is our duty to weigh, and giving it the weight that we deem it properly entitled to, we cannot construe the language complained of as possessing the significance and importance ascribed to it by the defendants’ counsel, and as operating, after the explanations and disclaimers made, to the prejudice of the accused. We find no case in which such chance, careless and incomplete expressions, even without the denial and explanations attending it, has been deemed sufficient to set aside a verdict.
III.
The next question presented is, whether a person otherwise qualified, who has conscientious scruples against the infliction of capital punish *16 ment, and avows sucli scruples wlien examined in his voir dire, is a competent juror in a trial for murder or other capital offense ?
The original punishment prescribed by our laws for murder was death. When, by subsequent statute, a jury was permitted to qualify their verdict by imposing imprisonment at hard labor for life, instead of the death penalty, it was intended by the la w-maker to invest them with a certain discretion, to be exercised by them according to facts and circumstances of the case, as they might bear on the enormity, depravity or cruelty that marked the commission of the crime. If such was the reason of the law, it is plain to see that no juror would be competent in sucli case, unless ho could exercise the discretion in the making up and rendition of his verdict, that the law designed to invest him with. Without such discretion, and possessing such scruples about the mode of punishment, he would fail to possess the essential qualifications required of a juror.
The question of competency in such case, is not, therefore, affected by the change in the law authorizing a qualified verdict, and this has been repeatedly ruled since the change was made. II A. 81, 283, 535 $ 13 A. 276; 14 A. 570.
IV.
On the trial of the case, a person called as a juror was asked the following questions:
“ If you were to be sworn as a juror in this case, and the evidence in your opinion justified a verdict of guilty, would you or not hesitate in rendering such verdict because you knew that the prisoners would in consequence thereof be hanged V’
The question was objected to, and the objection was sustained. The juror, it appears, had already stated that he was not opposed to capital punishment before the above question was asked him by the defendants’ counsel. We see no necessity or purpose in repeating the question or the answer to it, and there was no error in the refusal of the Judge to have it answered.
V.
The next question is that presented by the following bill of exceptions, which we copy:
“Be it known that on the trial of this cause, on the 28th day of January, 1881, one Joseph Lang, a witness, called and sworn for the State, was about to give, the declaration made to him by Maimée Alphonse, one of the defendants, whilst under arrest, which declaration was made under the following circumstances and after the witness, who is a police officer, had told him : ‘ Maimée don't cry; I would, not cry if *17 I was not guilty ; you would do better if you told me who the parties are.’ That, subsequently, when the said witness had placed him in a cell in the police station, lie, the said witness, was called back by Alphonse, and at that time the said officer told him: ‘ Now, remember, if you know the parties you had better tell me; Iwoiddnot suffer for any one else.’ Witness being about to repeat the declaration, counsel for the defendant objected, on the ground that if said declaration amounted to a confession, it was inadmissible in evidence, the same having been obtained by inducements from the witness who was an officer, and whilst accused (Alphonse) was under arrest and incarcerated, which objection of defendants the Court overruled, on the ground that the words used by the witness did not amount to an inducement, to which ruling of the Court defendants excepted and reserved this their bill of exceptions and tendered it for signature.”
This brings up one of the most important questions that the record presents. The subject of the admissibility of confessions has been a matter of frequent adj udications, and from the nature of the question, has been the subject of conflicting decisions.
As a general rule, both in civil and criminal cases, the confession of a party, when conclusively established, is regarded as the highest species of evidence. Indeed, when we reflect on the powerful motives that would induce a guilty party to deny his guilt and seek to hide his crime, we can scarcely conceive of the possibility of an innocent person of sound mind, falsely confessing his guilt of an offense with which he is charged. Such confession, wdien made, might, therefore, be reasonably viewed as the very strongest, if not conclusive evidence. Such confessions are, however, under certain circumstances, excluded. Such exclusion is based on the hypothesis that under some conditions, confessions may be made under fear so abject, or hopes so powerful, the one caused by threats or terrorism, and the other prompted by promises of reward or benefits, as to induce even an innocent person to make a false acknowledgment of guilt. Reason would teach us, that under the laws governing the conduct of men, the influence, whether of fear or hope, thus brought to bear upon a reasonable mind, must be strong and powerful indeed in their nature, to produce a result so at variance with human nature itself, because it must be presumed, that no man would make a confession against himself, if the facts confessed were not true. It is difficult to deduce any positive rule on this subject from the decisions, which, as stated, are not uniform, for the reason, that in each case, the question is, whether the influences applied in that case were likely to produce untruth — a question which rests, to a considerable extent, on the discretion of the Judge who is called on to decide it.
Wharton lays down the following general principles on the subject:
*18 “ A free and voluntary confession by a person accused of an offense, whether made before his apprehension or after; whether on a judicial examination or after commitment; whether reduced to writing or oral; in short, any voluntary confession, made by a defendant to any person at any time or place, is strong evidence against him, and, if satisfactorily proved, when there is j>roof of. the corpus delicti, sufficient to convict, according to the common law, without any corroborating circumstances.” Wharton on Criminal Law, vol. I., Sec. 683.
Russell on Crimes, vol. II., 824.
Archibald Criminal Practice, vol. I., 403.
Hawkins, P. C., c. 46.
State vs. Hauck, 28 Mo. 218; 36 Ala. 211.
Again : “ A confession can never be received in evidence where the defendant has been influenced by any threat of harm, or .where it has been extorted by pain, or made under the influence of fear.” Wharton vol. I., Sec. 685; 2 Russ. 826.
“ A confession will not be excluded where there is a mere adjuration to tell the truth, unaccompanied with a threat.” Ib. 636.
“ Confessions made even to constables or police officers cannot be excluded, unless it apj>ears that there was a threat of harm or promise of worldly advantage.” Ib. 12; Eng. Law and Eq. 591; 5 Cox, C. C. 523.; 37 Ala. 106 ; 14 Minn. 105.
Under these general principles, it has been ruled as follows:
“ Where the sheriff said to his prisoner, that it would be better in the long run for her to tell the truth about the matter and not any lies,” the confession, made a few minutes thereafter, was held admissible. Hawkins vs. State, 7 Mo. 190.
“ Saying to a prisoner, that it would be better for him to confess, 07-words to that effect, or that if he was guilty, it could not put him in a worse conditio7i, and that he had better tell the truth, will not exclude his confession.” Fonts vs. State, 8 Ohio, N. S. 98.
Aaron vs. State, 37 Ala. 106.
Young vs. Conn., 8 Bach. 366.
We recognize the weight of these authorities, and believe they are. sound law.
In the light of these principles and the rulings above cited, let us consider the question touching the admissibility of the confession before us.
Maimée, the accused, whose confession is in q7iestion, had been arrested, and it was to the officer making- the arrest, that the confession was made.
In the first place, we gather Horn the language used by the officer to the accused, upon which his counsel relies as holding out the induce *19 ment, something that takes it out of the strict line of the authorities on the subject. It is this: these, authorities, and the decisions we have examined, relate to cases where the question asked, or the remark made by the witness to the prisoner preceding the confession, showed au assumption on the part of the witness that the prisoner was guilty of the offense charged .against him.
This is a matter of no slight moment, for we can well conceive that a remark from an officer or other person having the prisoner in custody, conveying his, the officer’s belief, that the prisoner was guilty, and expressly or impliedly charging him with guilt, is calculated to impress the mind of a prisoner and destroy or impair its equipoise., much more than a question or a remark conveying no such charge. The prisoner might naturally conclude that the officer believed he was guilty, and perhaps every one else shared that belief, and the idea of a false confession be thus suggested to his mind, with a view to some advantage in the mitigation of his punishment or otherwise. But in this case, so far from tin* language used by the witness showing an assumption of the prisoner’s guilt, or a charge of guilt against Mm, it shows just the contrary, and was evidently prompted by a belief on the part of the witness, that the prisoner was not guilty, and could convey no other impression or meaning to tine prisoner himself. What other construction can be placed on this language: “ Maimée, don't ery; I would not ery if I was not guilty; youwovld, do better if you told me who the pen-ties cure." And “ JFow, remember, if you know the parties, youhad better tell me; 1 would not suffer for any one else."
This language cannot reasonably be construed as containing a threat, dr calculated to inspire terror or fear in the mind of a prisoner, how-ever great Ms timidity. -And it seems to us to be equally free from any promise, express or implied, calculated to inspire hope of an advantage, or benefit, to be derived from the confession. It cannot be construed to be more than advice or adjuration, which, as we have seen from the authorities cited, affords no sufficient cause for the exclusion of the confession. It was, therefore, properly admitted. 15 A. 563; 16 A. 377. As to the effect of that confession, whether it should be confined exclusively to the party making it, and not be used against his co-defendants, we are not called on to decide, and on this point, in fact, the record is silent.
YI.'
The deposition of Rachel Burns, a deceased witness, whose deposition had been taken contradictorily with the accused, or in their presence at the preliminary examination before the Recorder, was objected to on the following grounds:
*20 1. That the prisoners had the constitutional right to be confronted with the witnesses.
2. The deposition was not signed.
3. That it was not shown that the deposition had been read to the witness.
4. That one of the accused had no opportunity to cross-examine the witness.
It is now well settled that, where the depositions are taken before a magistrate, at a preliminary examination, contradictorily with the accused, and in their presence, and an opportunity for cross-examination is given, and the witness dies before the trial, the deposition is admissible.
The constitutional privilege of being confronted with the witnesses, it is now held, has, in fact, been afforded at such preliminary trial, and that is sufficient to meet the requirement. And the deposition was admissible against all, although one of them may not have been represented by counsel, he being present and having an opportunity to cross-examine, had he chosen to avail himself of it. Bishop Crim. Pro. Secs. 1096,1097.
Archibald Crim. Pr. and Pl., vol. I., p. 478, and notes; State vs. Harvey, 28 A. 106; State vs. Hooker, 17 Vt. 658; Brown vs. Cane, 73 Penn. St. 321; Barnett vs. People, 54 Ill; Davis vs. State, 17 Ala. 354.
The deposition was shown to have been regularly taken, certified to, and signed by the magistrate. This was all the statute required. It need not be signed by the witness, nor shown affirmatively by the State as a prerequisite to its admission, that it was read to the witness. R. S. Sec. 1010. Bishop Crim. Pro. §1095..
It was properly admitted.
It was urged, as one of the grounds for anew trial, which was overruled, that the Judge declined to permit a juror to ask a question of the counsel during- the course of his argument. It might suffice to say on this point, that the action of the Judge was not complained of at the time, and no bill of exception taken in relation thereto. Though not coming properly before us for this reason, we have, no hesitation in saying, that the matter complained of was entirely within the discretion .of the judge, and we are of opinion that it would evince a sound exercise of such discretion to refuse such privilege to the jurors, and prevent such interruption of counsel, except under extraordinary circumstances not likely to occur. Finding, after this review of all the questions and issues presented by the record, that there are no reasons for- disturbing the judgment appealed from, it is therefore .affirmed with costs.
Rehearing refused.