## STATE *v.* WILLIAM P. HOOKER.

An indictment, which alleged, in the first count, that the respondent made an assault upon one Smith, the said Smith "then and there being sheriff of said county of Addison," and which charged him, in the second count, with having "hindered and impeded a civil officer, under the authority of this State, to wit, Adnah Smith, sheriff of the county of Addison aforesaid," and which alleged, in both counts, that the said Smith was, at the time, in the "execution of his said office," was held to allege, with sufficient certainty, in both counts, that said Smith was sheriff of Addison county.

And if it be alleged, in such indictment, that the sheriff, at the time of the said assault and impeding, had in his hands a writ of execution against the respondent, which issued on civil process, and that he was about to execute the same by arresting thereon the body of the respondent, it is not necessary to allege that he had demanded of the respondent payment of the sum due on the execution.

And where it was alleged in the indictment, in such case, that the execution was dated the 27th of September, and that it was delivered to the sheriff, while it was in full life, on the 6th day of October, and that it was attempted to be served on the 7th day of November, and that it was made returnable in sixty days from its date, it was held that it sufficiently appeared that the execution was delivered to the sheriff within sixty days after its date, and that the sheriff attempted to execute it within its life.

And the allegation that the said Smith was in the execution of his duty as sheriff, and that, for want of property, on which to levy the execution, he attempted to serve and execute said writ of execution, as he was therein

State *v.* Hooker.

commanded, by arresting the body of the respondent, and that the respondent then and there, well knowing that said Smith was sheriff of the county of Addison, and that he then and there had said writ of execution to serve and execute and was then and there attempting to serve and execute the same, did then and there impede and hinder the said Smith, while attempting to serve and execute said writ of execution, was held as sufficiently averring that the sheriff had the execution in his hands at the time the resistance was made.

And it is unnecessary to allege, in such indictment, the *place*, at which the execution was delivered to the sheriff.

And, after a general verdict of guilty, it is no objection to the indictment, on motion in arrest, that offences of different grades, and requiring different punishments, are charged in the different counts. If any one or more of the counts are sufficient, the court will render judgment upon such counts; and if all the counts are sufficient, judgment will be rendered upon the count charging the highest offence.

If a hearing be had before a magistrate, upon the complaint of a town grand juror charging a person with the commission of a crime, and the respondent be, by the magistrate, bound over for trial by the county court, and an indictment be found against him, and, before a trial is had upon the indictment, a witness, who testified before the magistrate, dies, evidence may be received, on trial upon the indictment, to prove what that witness testified before the magistrate.

And it is not necessary, on such trial, to prove the exact language used by the witness in giving his testimony before the magistrate; it is sufficient, if the substance of his testimony, as there given, be detailed.

If a sheriff, in attempting to execute a writ of execution, on civil process, which is delivered to him to be levied, break open the outer door of the dwelling house of the execution debtor, where the debtor then is, with a view of arresting the body of the debtor on the execution, such act is unlawful; and if, after the sheriff has entered the house, the debtor forcibly resist the attempt of the sheriff to arrest him, and commit an assault and battery upon the sheriff, an indictment will not lie against the debtor for so doing.

INDICTMENT for an assault and battery upon a sheriff, and impeding him in the execution of the duties of his office. The indictment was in these words.

"State of Vermont, Addison County, ss. Be it remembered, that, at a term of the county court, begun and holden at Middlebury, within and for said county of Addison, on the second Tuesday of June, A. D. 1843, The Grand Jurors within and for the body of the

County of Addison, now here in court duly impanneled and sworn, upon their oath present, that William P. Hooker, of Middlebury aforesaid, at Middlebury aforesaid, on the seventh day of November, in the year of our Lord one thousand eight hundred and forty two, with force and arms, in and upon one Adnah Smith, in the peace of God and of this State then and there being, and then being sheriff of said county of Addison, and in the due execution of his said office, then and there did make an assault, and him, the said Adnah Smith, so being in the due execution of his said office, aforesaid, then and there did hinder and impede, and then and there did beat wound ·and ill-treat, and other wrongs to the said Adnah Smith then and there did, to the great damage of the said Adnah Smith and against the peace and the dignity of the State.

And the Grand jurors aforesaid, on their oaths as aforesaid, do farther present, that the said William P. Hooker, at Middlebury aforesaid, on the seventh day of November, in the year of our Lord one thousand eight hundred and forty two, with force and arms, wilfully and knowingly did impede and hinder a civil officer, under the authority of this State, in the execution of his office, to wit, Adnah Smith, sheriff of the county of Addison aforesaid, in the peace of God and this State then and there being, in then and there serving and attempting to serve and execute a legal writ of execution, to wit, a *pluries* writ of execution, regularly issued on a judgment rendered by the Honorable County Court in and for said county of Addison, at a term of said court begun and holden at Middlebury, in and for said county of Addison, on the second Tuesday of June, A. D. 1842, said execution dated the 27th day of September, A. D. 1842, and signed by Samuel Swift, clerk of said court, and directed to any sheriff or constable in the State, and made returnable in sixty days from the date thereof, whereby, after reciting that Harry Goodrich of said Middlebury, by the consideration of the county court begun and holden at Middlebury, in and for said county of Addison, on the second Tuesday of June, A. D. 1842, recovered judgment against the said William P. Hooker and one Charles Hooker in an action of trespass, (the cause of which action it was adjudged by said court arose from the wilful and malicious act of the defendants,) in the sum of three hundred and forty one dollars and fifty six cents, damages, and for the sum of thirty two dollars

and seventy cents, costs of suit, whereof execution remains to be done for the sum of $307.70, said officer, as often before commanded, is therefore, by virtue of said writ of execution, by the authority of the state of Vermont, commanded to cause to be levied, of the goods, chattels, or estate of the said William P. Hooker and Charles Hooker, said sum of $307.70, with 25 cents more for said writ of execution and 50 cents for two others, and, for want of the goods and chattels of said William P. and Charles, shewn or to be found by said officer within his precinct, commanding him to take the bodies of said William P. Hooker and Charles Hooker, and them commit to the keeper of the common jail in Middlebury, in said county, within said prison, which said writ of execution, so duly issued as aforesaid, in full life, and in no way satisfied, paid, or discharged, was, on the 6th day of October, A. D. 1842, delivered to said Adnah Smith, sheriff as aforesaid, to serve and return, and afterwards, to wit, on the seventh day of November, A. D. 1842, at Middlebury aforesaid, the said Adnah Smith, then being sheriff, as aforesaid, for want of the goods, chattels, or lands of the said William P. and Charles, shown him or to be found within his precinct, whereon to levy said writ of execution, attempted to serve and execute said writ of execution, as he was therein commanded, by arresting the body of said William P. Hooker ; and the said William P. Hooker then and there, unlawfully and wickedly intending to impede and hinder the said Adnah Smith in the execution of his said office, and well knowing that said Adnah Smith was sheriff of the county of Addison as aforesaid, and that said Adnah Smith then and there had said writ of execution, so duly issued and in full force as aforesaid, to serve and execute, and was then and there attempting to serve and execute said writ of execution, did, with force and arms, then and there impede and hinder the said Adnah Smith, sheriff as aforesaid, in attempting to serve and execute said writ of execution, in the execution of his said office, by beating and bruising the said Adnah Smith with a large and heavy bludgeon on his head, shoulders and arms, to the great damage of the said Adnah Smith, to the great hindrance and obstruction of justice, and contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State."

The indictment also contained a count for a common assault upon

the said Smith, and also a count for an assault and battery committed upon one George W. Church.   Plea, not guilty.

On trial the counsel for the prosecution gave in evidence the record of the justice of the peace, who held the court of inquiry, and by whom the respondent was bound over for trial by the county court, and proved that Adnah Smith, the sheriff, was a witness, duly sworn, and that he testified before the magistrate, on said examination, and that he was also cross-examined by the respondent, and that he had since died ; and the said justice was called as a witness, to prove what was the testimony of said Smith before him, at said court of inquiry.   The justice, upon inquiry, stated that he could not give the precise language of the witness, but only the substance of his testimony, as given upon the examination in chief and the cross-examination.   The respondent objected to the examination of the justice, under such a state of facts, as to the testimony of Smith ; but the court overruled the objection and admitted the testimony.

It appeared, from the testimony, that on the 7th day of November, 1842, Adnah Smith, then being sheriff of Addison county, had in his hands, as sheriff, the writ of execution described in the indictment, to serve and return according to law, and that, on the evening of the same day, he went, with some assistants, among whom was George W. Church, to the dwelling house of the respondent, for the purpose of making service of the writ of execution upon the respondent by arresting his body ; that, upon their arrival at the house, they found the outer door fastened, and the respondent and his family within, and, after some short delay, and some conversation with the respondent's wife, the sheriff, not succeeding in inducing her to open the door for him, burst open the door by bending or wrenching off the latch, with which it was fastened, and thereupon went into the house, with his assistants, against the will of the respondent, with the intent and for the purpose of arresting the respondent upon said execution ; that, soon after the sheriff had thus entered the house, and after some little conversation with the wife of the respondent, the sheriff became satisfied that the respondent was in the chamber, and he thereupon opened the chamber door and informed the respondent that he had an execution against him and wished him to come down and surrender himself upon it, and this he repeated several times, but received no reply ; that, soon after

this, Smith attempted to ascend the chamber stairs, in order to arrest the respondent, and, while ascending, the respondent struck him violently with a large club upon his head, so as to make him fall back to the foot of the stairs; that, soon after, at the request of Smith, George W. Church attempted to ascend the stairs in pursuit of the respondent, and he also received a violent blow upon the head from the respondent, and was, by its force, driven back; that thereupon Smith and Church attempted to ascend the stairs together, in order to arrest the respondent, and the respondent again struck Smith with a club, but they succeeded in ascending the stairs and arresting the respondent; and that, after the respondent had been once taken, he made no farther resistance, and was committed to jail upon the execution.

The court charged the jury, that, though the sheriff had no right to break open the outer door of the respondent's dwelling house, in order to arrest him on the execution, and though the sheriff thereby made himself liable to an action of trespass on the freehold, yet that, being once within the house, if he proceeed after this to arrest the body of the respondent on the execution, and the respondent with force resisted him, while in the execution of his office, and while attempting to arest him on the execution, they would find the respondent guilty. The jury were also told, that they must take the law of the case from the court, and follow their instructions, in that particular, as their rule.

The jury returned a general verdict of guilty. After verdict the respondent filed a motion in arrest of judgment, which was overruled by the court. Exceptions by respondent. The exceptions were allowed, the sentence respited, and the cause passed to the Supreme Court.

*E. D. Barber* for respondent.

I. The court erred in admitting the testimony of the justice, by whom the court of examination was held, as to what the deceased witness testified at said court;—

1. Because he could not give the language of the witness; 1 Stark. Ev. 261–2, 280; 2 Russ. on Crimes 683; 1 Phil. Ev. 200, 274; 4 T. R. 290; 3 C. & P. 387; *Melvin* v. *Whiting*, 7 Pick. 81.

2. Because it was not given on a *trial* between the same parties,

but upon a mere hearing to determine whether the respondent should be held for *trial.* 1 Chit. Cr. Law 81–2, n. *e.*

II.   The court erred in their charge in relation to the validity of the arrest, made by the officer after a breach of the outer door of the respondent's dwelling house, for the purpose of making the arrest.   The principal authorities, which have any tendency to support the doctrine contained in the charge, are believed to be the following ; 18 Edw. IV, 4 ; *Somayne's Case,* 5 Co. 93 ; Bac. Abr., Sheriff, N 3 ; *Lee* v. *Gansel,* Cowp. 1 ; Dalt. Sheriff 353 ; 1 Back. Sheriff 129 ; *Hemenway* v. *Saxton,* 3 Mass. 222 ; *Widgery* v. *Haskell,* 5 Mass. 155 ; *State* v. *Miller,* 12 Vt. 437.   From an examination of these authorities, it appears that nearly all of them relate to the execution of goods, 'and not to the arrest of the body, and are grounded upon the authority of a case in the Year Book, 18 Edw. VI, 4, and a reference to that authority in 5 Co. 93.   It would seem, however, that the case in the Year Book is not authority, to sustain even the doctrine, that an execution of a *fi. fa.,* after a breach of the outer door of a dwelling house, is good.   Yelv. 29, Metcalf's Ed. note 1 ; *People* v. *Hubbard,* 24 Wend. 369 ; *Curtis* v. *Hubbard,* 4 Hill 487 ; 12 Pick. 270.   In Bac. Ab., above cited, it is, indeed, said in the text, that the execution of a *capias,* or *fi. fa.,* would be good ; but in the note this is doubted, and the " modern practice," it is said, " in some cases, is, to discharge such execution on complaint by affidavit, and to *grant an attachment against the officer ;* " and the case of *Yeates* v. *Delamaque,* in Trinity term, 17 Geo. III, in the court of exchequer, is cited in support of the doctrine of the note.   The case in Cowper, although an application to discharge the defendant from prison, on the ground of an illegal arrest, made after breaking into the apartment where he lodged, turned entirely on the ground that the door broken was not an outer door. The case in Dalton's Sheriff is the same as 18 Edw. IV. 4.   In Backus' Sheriff the authority cited is 5 Co. 93, which contains a mere reference to 18 Edw. IV, 4.   The cases in the 3d & 5th Mass. were attachments of goods.   The case in the 12 Vt. merely decides, that the owner of personal property may not resist, by personal violence, an officer, who attempts to attach such property as the property of another.   These authorities seem, therefore, to fail

entirely of sustaining the doctrine, that the execution of a *fi. fa.*, made after breaking into the debtor's dwelling house, is good.

But, whatever may be the law on that point, we contend that an *arrest*, made under the circumstances of this case, is void, and that the party arrested is justified in resisting the officer in making it. The old maxim of the law is, that "every man's dwelling house is his castle," and that the outer doors thereof cannot be broken, for the purpose of executing civil process. It makes the dwelling house of every individual in community a "privileged place," and the *place* affords protection to the occupant and his family. It is not, therefore, simply the breaking the outer door, or window, which is prohibited, but it is the invasion of the man's sanctuary. The following authorities are cited in support of the rule, for which we contend. 1 Chit. Cr. Law 54–5; Yelv. 29, note 1, above cited; Cowp. 1; 2 Back. Sheriff 460, *addenda;* Bac. Ab., above cited; 11 Pick. 379; *Ilsley* v. *Nichols,* 12 Pick. 270; 24 Wend. 369; 4 Hill 337; 1 Russ. on Crimes 520; Smith's Leading Cases 109, *Semayne's Case* 5 Co. 93, and notes; 8 Vt. 424; *Chipman v. Bates,* 15 Vt. 51; Rev. St. 74, §§ 17, 18.

The decisions in analogous cases are entirely inconsistent with the doctrine of the charge. The law can only secure the subjects of it from abuse, by making every thing accomplished by its abuse void, and leaving the party abusing it in the same situation, as if he had no authority, and was acting as a private individual. *Bagshaw* v. *Gaward,* Yelv. 96, & cases there cited; Bac. Ab., Trespass B, and Sheriff N, 3; *Ex parte Wilson,* 1 Atk. 152; *Loveridge* v. *Plaistow,* 2 H. Bl. 29; *Luttin* v. *Benin,* 11 Mod. 51; *Birch* v. *Prodger,* 4 B. & P. 135; *Atkinson* v. *Jameson,* 5 T. R. 25; *Wells* v. *Gurney,* 8 B. & C. 769; Yelv. 29, & cases cited in note; 13 Johns. 414; 8 T. R. 187; 4 Pick. 249; 10 Johns. 253, 369; Smith's Leading Cases 120.

III. The motion in arrest of judgment should prevail.

First, Because the first and second counts are insufficient, as counts for impeding an officer; 8 Vt. 424; 3 Vt. 110; 1 Chit. Cr. Law 223. They are good only for an assault at common law; 8 Vt. 424.

Second, Because the second count is bad, as a count for impeding an officer.

84

State *v.* Hooker.

1. It is not alleged directly that Adnah Smith was sheriff of Addison county. 1 Chit. Cr. Law 171–2, 199.

2. It is not alleged that the sheriff had demanded the sum required by the execution to be levied of the respondent, or that the respondent had refused to pay said sum on such demand, or expose personal property sufficient to satisfy it.

3. It is not alleged, that, at the time of the resistance by the respondent, the sheriff was in the execution of his office, or was executing his process. 2 Hale's P. C. 354, § 110; 1 Chit. Cr. Law 281–2.

4. It is not alleged, that the execution was delivered to the officer within sixty days after the date thereof.

5. It is not alleged that the sheriff attempted to execute the said execution within the life of the same.

6. It is not alleged, that, at the time of the resistance on the 7th of November, 1842, the sheriff had the execution in his hands.

7. It is not alleged that the execution was delivered to the officer at any place. *State v Bacon,* 7 Vt. 219; 2 Hale's P. C. 344, § 77; 1 Chit. Cr. Law 196–8.

None of these defects are cured by verdict. 1 Chit. Cr. Law 661; 2 Hale's P. C. 355.

Third, The judgment must be arrested generally;—because, the verdict being general, and the offences described in the different counts being of different grades and requiring different punishments, no judgment can be rendered on the verdict. 3 T. R. 103; 1 Chit. Cr. Law 254, 637–8, 641.*

*O. Seymour,* State's Attorney.

The two first counts in the indictment are sufficient. The first is substantially according to well established forms for an indict-

---

*The counsel for the respondent also argued, very fully, the question arising upon that portion of the charge of the court, in reference to the right of the jury to judge of the law as well as the facts in the case, and the same question was very elaborately examined in the opinion of the court; but, inasmuch as all the members of the court were not present, and those present were divided in opinion upon the point, and no decision whatever was announced in reference to it, it has been deemed advisable by the learned judge, who delivered the opinion, not to publish that portion of it which related to this subject.

ment at common law for an assault and impeding an officer in the execution of his duty; and the second count fully and sufficiently charges the statute offence. 8 Vt. 424, and cases there cited.

The indictment is not deficient by reason of misjoinder of offences. The several counts simply set forth the same transaction in different ways, which is no ground of demurrer, or motion in arrest. 1 Chit. Cr. Law 249, 250.

The evidence of what the deceased witness, Adnah Smith, testified at the court of examination was properly admitted. Greenl. on Ev. 195, 196. 12 Vt. 437.

The fact that the officer was guilty of a trespass, in opening the outer door of the respondent's house against his will, affords no justification for the assault and impeding the officer, when he subsequently attempted to arrest the respondent on the execution against him. *Semayne's Case*, 5 Co. 93; 1 Chit. Cr. Law 56; 1 East's P. C. 323; 12 Vt. 437.

The opinion of the court was delivered by

HEBARD, J. A great variety of questions have been argued in this case; and we shall first dispose of those, that have arisen upon the motion in arrest.

In the first place, it is said that the indictment does not allege that Adnah Smith was sheriff of Addison county. In the *first* count the respondent is charged with having made an assault upon Smith, then and there being sheriff of said county of Addison. In the *second* count he is charged with having hindered and impeded a *civil officer*, under the authority of this State, to wit, Adnah Smith, sheriff of the county of Addison aforesaid; and in both counts Smith is alleged to have been in the execution of his said office. We think this is a sufficient allegation, that Smith was sheriff; the allegation in the second count, though not expressed with as much *nicety of diction* as the fact was susceptible of, is still direct, and in no way equivocal.

The next objection is, that it is not alleged that the sum due on the execution had been demanded of the respondent, or that he had refused to pay it. This was not necessary to be done. It was a sufficient demand, when he was there with the execution, claiming of the respondent that he surrender himself upon it. If the respon-

dent, for want of such demand, could not sustain an action for false imprisonment against the officer, then the want of such demand would not justify resistance to the officer, when *making the arrest ;* and, consequently, it was not necessary to allege that a demand had been made.

It is farther objected, that it is not alleged that the execution was delivered to the officer within sixty days after its date ; nor that the officer attempted to execute it within its life. The indictment alleges that the execution was dated the 27th of September, 1842, that it was delivered to the sheriff, while it was in full life, on the 6th day of October, 1842, that it was attempted to be served on the 7th day of November, 1842, and that it was made returnable in sixty days from date. *Id certum est, quod reddi certum potest.* That it might have been proved that it was delivered on some other day makes no difference ; the allegation is direct, and the day alleged will stand for the true day, until some other is proved.

It is farther objected, that there is no allegation that the sheriff had the execution in his hands, at the time the resistance was made, on the 7th of November, 1842. It is alleged that he was in the execution of his duty as sheriff, and that, for want of property, on which to levy the execution, he attempted to serve and execute said writ of execution, as he was therein commanded, by arresting the body of the said Hooker, and that the said Hooker, then and there well knowing that said Smith was sheriff of the county of Addison, and that he then and there had said writ of execution to serve and execute, and was then and there attempting to serve and execute the same, did then and there impede and hinder the said Smith, while attempting to serve and execute said writ of execution. All these allegations, taken together, though not in terms, fully amount to the allegation, that the sheriff had the execution in his hands. How could he be in the execution of his duty as sheriff, and how could he be attempting to *serve this* execution, unless he had it in his hands ?

Another objection, though not much relied on, is, that no *place* is alleged, at which the execution was delivered to the sheriff. The place where the execution is delivered is immaterial ; the place where it is to be executed is important ; and the time when it was delivered is material,—for the validity of the execution in some de-

State *v.* Hooker.

gree depends upon that. But it is not necessary to allege where the execution is delivered, for, if the officer has it in his possession in his precinct, it is of no importance whether he received it there, or in some other place.

It is farther insisted, that the indictment is insufficient to sustain a judgment upon this general verdict, because different grades of offences are charged in the different counts, requiring different punishments. The verdict being general, it is to be understood, that the jury found the respondent guilty upon all the counts; and if any one or more of the counts is sufficient, the court will render judgment upon such as are good; if all are good, then judgment will be rendered upon the count charging the highest offence. Such is the authority of the case of *State* v. *Downer,* 8 Vt. 424.

This briefly disposes of all the questions in relation to the *sufficiency* of the *indictment.*

The next question to be noticed is the one in relation to the testimony of the *magistrate,* who held the court of inquiry, in relation to what the deceased witness, Smith, testified before him. There are two objections to this testimony. The first is, that the testimony of Smith was not given in the same case, as the one in which the magistrate testified. That it was between the same parties cannot be doubted. The proceedings before the magistrate were in the name of the State against the respondent. That the subject matter of the complaint before the magistrate and the indictment, upon which the respondent was tried, are *identical* is admitted. The complaint before the magistrate, and the holding to bail, is a mode provided by statute for commencing proceedings; and although the hearing before the magistrate is not *technically* a trial, still the proceedings are *compulsory* and *adversary,* the witnesses are compelled to attend and sworn to testify, and, upon the *sufficiency,* or *insufficiency,* of the proof, the accused is either set at liberty, or required to give bonds for his appearance at the *county court,* to take his trial upon the facts set forth against him. The hearing before the magistrate and the trial before the county court are therefore in the same case, and are only distinguishable, in this respect, from a civil trial, by the mode of proceeding which the statute has provided.

The other objection is, that the magistrate could not give the

words of the deceased witness. If this objection is to prevail, it is doubtful whether the testimony of a deceased witness could ever be used ; for it is hardly to be supposed that it would ever so happen, that the words of the witness could be repeated, as he spoke them. This testimony is to be received like other testimony, subject to *criticism* and *remark;* and the less accurate and precise the witness is, in giving this testimony, the less credit it should gain with the jury. This testimony must come like all other. If the witness is conscious of having omitted any important part of the testimony, or if that fact should be made to appear in any other way, the jury may reject the whole of the testimony, as being unsatisfactory ;—but for this the court cannot reject it.

We are next to inquire in relation to the charge of the court. Upon this two objections have been urged. The first is, in relation to what the court told the jury, as to the respondent's right to resist the sheriff, after he had made a forcible and tortious entry into the respondent's house.

The case finds that the sheriff went to the respondent's house with a legal process, for the purpose of serving it upon him, and found the *outer* door fastened, and, not succeeding in having the door opened, that he burst it open by wrenching off the latch. The court told the jury that the sheriff had no right to break open the outer door, and that for so doing he was a *trespasser*, but that, if, after he had thus effected an entry into the house, he proceeded to arrest the respondent, the respondent had no right to resist him. No question is made, upon either side, but what the charge was correct in relation to the first breaking open the house. It is a familiar maxim of the law, that "a man's house is his castle," and that he has a right to defend it. How far he may carry his defence, and within what bounds it must be restrained, is the subject of inquiry. A man has a right to defend himself against an unlawful aggression, to an extent that shall make his defence *effective*, without regard to consequences. Chitty, in his treatise upon criminal law, lays down the doctrine, in its broadest sense, that the breaking the outer door of a dwelling house, upon civil process, is *unjustifiable.* The inquiry, therefore, is, whether, having thus done what is unjustifiable, the sheriff may, by the means and aid of this unjustifiable act, proceed to do a lawful act.

The officer, when he restrains the debtor of his liberty, justifies the act by the authority of the law, not by any natural right of his own to do so. It then presents this strange anomaly, that an officer, who has no authority, except what is delegated to him by the law for a specified purpose, can justify an attempt to restrain the liberty of another, when his purpose is aided and accomplished by an *un-justifiable* act, and a breach of the very law, under which he assumes to act. Mr. Chitty makes a distinction between the killing an *officer*, thus breaking the outer door, and one not an officer. But what shall be the effect of any resistance short of killing, he does not say. There are instances, in which an officer may be resisted, which he enumerates; and they are,—1, When the warrant is defective,—2, When it is not enforced by a proper officer,—3, When it is executed out of the jurisdiction,—4, When the wrong person is taken under it; so that, by this authority, it seems that the *person* of the officer is not so sacred, that all *other rights* must *yield* and be *postponed* to his. It would, by this, seem, therefore, that, in order to throw the shield of the law over an officer, so as to make it *criminal* for another to resist him in what he is attempting to do, certain requisites are *necessary*. He must not only be a legal and proper officer, but he must have a good and sufficient precept, which he is attempting to execute, and he must be attempting to execute it in a *legal* way. Was the officer attempting to execute his precept in a legal way, when his *first act* was *unjustifiable* and against law?

There is another way of testing this, that I do not recollect was noticed in argument. After the respondent had made the resistance, for which he is indicted, he was arrested by the officer. Now suppose the respondent had instituted proceedings to obtain a discharge from that arrest,—what would have been the inquiry, and what ought to have been the judgment? Without answering the question, which I have proposed, we can see what has been the *inquiry* and what the judgment in analogous cases. There are certain times and occasions, on which persons are exempted from *arrest* on civil process,—such as witnesses, parties and jurors, in attendance upon court, and members of parliament, public ambassadors and their servants; and when such are arrested, and even committed on execution, they are discharged from custody, and in some cases it has been held, that the court had the power to punish the officer

for arresting them. *Bartlett* v. *Hebbes*, 5 T. R. 686; 2 Johns. 294; 7 Johns. 538; Yelv. 29, note, and cases there cited.

When a man is wrongfully brought into a jurisdiction, and is there lawfully arrested, yet he ought to be discharged; for "no lawful thing, founded on a wrongful act, can be supported;" *Per* Lord Holt, in 11 Mod. 51. Where a person was detained without a writ, and afterwards, while thus detained, was arrested on a writ, he was discharged; 2 H. Bl. 29. All these legal maxims have their *correlatives.* When A. unlawfully attempts to arrest B., B. may lawfully resist him. Whatever I may *lawfully* enjoy, I may lawfully defend. In the protection of my own rights, whatever it is *unlawful* for another to do, it is lawful for me to *prevent* him from doing.

In the present case, then, if it was unlawful for the officer to break open the house, in order to arrest the respondent, it was lawful for the respondent to prevent him from doing it. The breaking and arresting were dependent, one upon the other, and are not to be disconnected. The breaking was for the purpose of *arresting*, and the *arresting* was *consequent* upon the *breaking.* It would therefore seem to follow, that, if one was *unlawful*, the other was equally so.

The case of *Semayne* v. *Gresham,* from 5 Co. 91, reported in Yelverton 29, has been cited by the attorney for the government. All that can fairly be deduced from that case is, that the officer cannot break the outer door, and that the defendant, when he sees the sheriff coming, may shut his door against him; for that is all the defendant did, and it was for that, that he was sued. If it is to be held, that all, that is meant by a man's house being his castle, is, that he may defend it, if he can, but that, if he cannot, and is overcome, he is then left as defenceless as he would have been under other circumstances, then the notion about his house being a protection to him is all frittered away and is a mere shadow. The case of *State* v. *Miller* is also cited; but that is far from being authority for this case. The most that case settles is, that it will not do for a man to resist the sheriff, when about to take property, but that, if the sheriff takes property, that does not belong to the defendant, he must answer in a suit for damage, where the question can be tried. The case of *Ilsley* v. *Nichols,* 12 Pick. 280, goes farther than it is necessary to go, in deciding this case. In that case it is held, that,

State *v.* Hooker.

when the officer breaks the outer door, to attach property of the debtor, and attaches the property, he is a trespasser, not only for breaking the house, but for taking the goods also. That is a well considered case, and is founded on such considerations, as would govern one like the present.

We therefore consider that the charge of the county court was erroneous in this particular. The court had no occasion to give the jury any instruction in relation to the kind or degree of resistance, that the respondent might make, while they held that he could not lawfully make any; and of course none was given; and perhaps that question could not well arise, as the case finds that he did not use so much resistance, as to effect his purpose,—as the officer succeeded in arresting him.

A new trial is granted, and the case is remanded to the county court.