STATE OF CONNECTICUT *v.* CARMEN J. CESERO

BALDWIN, KING, MURPHY, MELLITZ and SHEA, JS.

Argued April 8—decided May 5, 1959

*Philip Reich,* for the appellant (defendant).

*James J. O'Connell,* prosecuting attorney, for the appellee (state).

SHEA, J. The defendant has appealed from a judgment of guilty based upon an information, brought

under § 8502 of the 1949 Revision (Rev. 1958, § 53-165), which charged in the words of the statute that he did "abuse [an] officer concerned in the administration of justice while in the execution of his office." The defendant seeks certain additions or corrections to the finding. He also claims error upon the ground that certain conclusions are not legally supported by the subordinate facts.

The finding of the court, together with such corrections as are warranted, discloses the following facts: On July 27, 1957, and for several years prior thereto, the defendant was the manager of the Venice Athletic Club, located on Main Street in Bridgeport, and on that date he was in charge of the club premises. On July 5, 1957, upon the request of the prosecuting attorney, a judge of the City Court of Bridgeport had issued a warrant directing a search of the premises and a seizure of any gambling and lottery implements found therein. The warrant was directed to any proper officer within the city. A day or two later the warrant was turned over to a captain of the Bridgeport police. No action pursuant to the direction of the warrant was taken until July 27, when the captain, in the company of a patrolman, went to the club about 12:35 a.m. to make a search of the premises to see if gambling was going on. Both officers were in uniform. Upon arriving, the captain knocked on the locked door, and when no one came to the door he kicked it after waiting three or four minutes. A minute or two later the defendant opened the door. The captain handed the defendant the search warrant, dated July 5, 1957, and then pushed past him and entered the main room of the club, followed by the patrolman. There were at least thirty men in the place, which consisted of a small entrance room, about six feet deep, and a large

room, about sixty feet deep. The large room contained a pool table, an assortment of pool cues on the wall, soda and cigarette vending machines, and some furnishings, including chairs and a television set.

After the officers entered the large room, the defendant started to shout that the warrant was no good, and in a very loud tone of voice said that he was going to the captain's house without a warrant and get into the house, and that he was going to shoot the captain's head off or would knock his head off his shoulders with a club. The defendant then called the captain a vile name. The defendant started to tear up the warrant, but the captain grabbed his hand, took the warrant from him and placed him under arrest. No search was made of the premises because of the conduct of the defendant. The captain did not make any return upon the warrant but held it in his possession until the trial of this case in the City Court, when it was made an exhibit in evidence. The captain had been to the club several times prior to July 27 and had never found any evidence of gambling. A few months before this occurrence, he had gone to the club and attempted to search the people in it. At that time, he made a number of arrests, but the charges were dismissed after a trial in the City Court of Bridgeport.

Upon these facts, the trial court concluded that the police were on the premises under a claim of right and that the defendant did not have the right to use the language he did, regardless of the validity of the warrant. To convict the defendant, the state assumed the burden of proving beyond a reasonable doubt all the essential elements of the crime. Not only was it necessary for the state to show "abuse" under the statute but it was required to prove that

the abuse occurred when the officer was "concerned in the administration of justice while in the execution of his office."

Section 8 of article first of our state constitution secures the rights of persons against unreasonable searches or seizures. Search warrants are a species of process arbitrary in character. Resort should be had to them only for urgent and satisfactory reasons, and the rules of law applicable to them should be strictly construed. If a person acting under them expects legal protection, these rules must be carefully observed. 1 Cooley, Constitutional Limitations (8th Ed.) p. 618. An officer who undertakes to execute such a warrant must comply strictly with all the directions contained in it. As an executive officer, his sole duty is to execute, not to decide on the truth or sufficiency of the process committed to him for service. He has no judicial authority, and it is his duty to obey the mandate of the warrant. If the precept is directed by competent authority, and with legal regularity, and it so appears upon its face, an officer is justified in every action he takes within the scope of its command. *Watson* v. *Watson,* 9 Conn. 140, 146. Where the precept is good upon its face, it protects the officer who serves it even though it was not issued by competent authority. *Neth* v. *Crofut,* 30 Conn. 580, 581; *Osgood* v. *Carver,* 43 Conn. 24, 30; 2 Swift, Digest, p. 391.

The fundamental principles underlying and regulating the use of search warrants require that this arbitrary form of process be executed within a reasonable time from the date of issue. *Elrod* v. *Moss,* 278 Fed. 123, 128; *Farmer* v. *Sellers,* 89 S.C. 492, 497, 72 S.E. 224; *State* v. *Guthrie,* 90 Me. 448, 452, 38 A. 368; *State* v. *Pachesa,* 102 W. Va. 607, 612, 135 S.E. 908; Cornelius, Search & Seizure (2d Ed.)

p. 541. Unless the search warrant is executed within a reasonable time, it is invalid when the search is made. *State* v. *Pachesa,* supra; *People* v. *Weideman,* 324 Ill. 66, 67, 154 N.E. 432; *People* v. *Fetsko,* 332 Ill. 110, 111, 163 N.E. 359; *State* v. *Perkins,* 220 Mo. App. 349, 354, 285 S.W. 1021. Ordinarily, the question of what constitutes a reasonable length of time is one of fact to be determined under the circumstances of each case unless there is but one conclusion which can be drawn from the evidence, thus making it a matter of law. *State* v. *Pachesa,* supra; *Farmer* v. *Sellers,* supra, 498.

The conclusion of the trial court that the defendant was guilty of the crime charged regardless of the validity of the warrant cannot stand. The determination of the question whether the officer was "concerned in the administration of justice while in the execution of his office" is dependent upon the validity of the warrant. If the captain was acting under authority of a search warrant valid upon its face, he was justified in entering the premises. He would then be "concerned in the administration of justice while in the execution of his office." But even if he was in possession of a warrant valid on its face, he was under a duty to execute it within a reasonable time. If he did not, the warrant would be invalid when the search was made. The answers to these questions are vital to a proper determination of the guilt or innocence of the defendant. Since the trial court did not resolve the questions, it becomes necessary to order a new trial.

The conclusions reached by the trial court upon the subordinate facts found involved the application of an erroneous rule of law which was material to the case. *LaChappelle* v. *Jewett City,* 121 Conn. 381, 385, 185 A. 175; Maltbie, Conn. App.

Proc. § 166, p. 206. Such conclusions cannot stand.
There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.