STATE OF CONNECTICUT *v.* RICHARD GALLAGHER

STATE OF CONNECTICUT *v.* CAROL GALLAGHER
(11483)
(11484)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued June 8—decision released September 13, 1983

*William J. Curran,* for the appellants (defendant in each case).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* state's attorney, and *Susan A. Moch,* assistant state's attorney, for the appellee (state in each case).

PETERS, J. The dispositive issue in these appeals[1] is whether the common law privilege to resist an unlawful warrantless entry by the police into one's home remains a defense to the misdemeanor of interfering with a police officer. After a jury trial, the defendants Richard and Carol Gallagher were found guilty of interfering with an officer, in violation of General Statutes

---

[1] For the purposes of these appeals, the parties have stipulated that our resolution of the first appeal, *State of Connecticut* v. *Richard Gallagher,* shall be conclusive of the appeal of Carol Gallagher as well.

§ 53a-167a.[2] From the judgments of conviction the defendants appealed to the Appellate Session of the Superior Court. The Appellate Session found no error; *State* v. *Gallagher,* 38 Conn. Sup. 364, 447 A.2d 1175 (1982); and we granted certification.

The jury reasonably might have found the following facts. The defendants, who are husband and wife, had lived for several years in a house in a residential neighborhood of Milford. On December 28, 1979, at approximately 11 a.m., their neighbor, Angela Jerolman, was in her yard when she observed the defendant Richard Gallagher looking at her. He walked to his front porch, turned to her and called "[d]id you miss anything, you nosey bitch, you?" Jerolman thereupon entered her house, called the police, and asked them to arrest Gallagher. Although on several previous occasions Jerolman had complained to the police of the Gallaghers' playing of loud music and of the Gallagher children riding their bicycles in her driveway, this was the first time that she had sought Gallagher's arrest.

Shortly thereafter officer Michael Hanlon arrived alone at Jerolman's house and obtained her version of the preceding events, including her reiterated and adamant request that Gallagher be arrested. Officer Hanlon agreed to speak to Gallagher and told Jerolman that in the event the problem could not be resolved, Gallagher might be arrested. Before proceeding to the Gallagher's residence, officer Hanlon radioed from his squad car for backup assistance on the possible arrest.

Then, without obtaining a warrant, officer Hanlon knocked or rang at the front entrance of the Gallagher

[2] "[General Statutes] Sec. 53a-167a. INTERFERING WITH AN OFFICER: CLASS A MISDEMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.

"(b) Interfering with an officer is a class A misdemeanor."

home. At this point, no more than one hour had elapsed since Gallagher's abusive remark. When the Gallaghers answered the front door, Hanlon informed them that he was investigating a neighborhood dispute and they invited him into their foyer. Officer Hanlon inquired concerning the incident with Jerolman, and Gallagher, denying Jerolman's accusation, claimed that he had not left his house all day. At this point, another police officer arrived and the Gallaghers invited him to enter also. Officer Hanlon then asked Gallagher to accompany him outside for further explanation of the details of Jerolman's complaint, but Gallagher refused to leave his residence.

At that point, Hanlon placed his hand on Gallagher's shirt and advised him that he was under arrest for breach of the peace.[3] Gallagher protested that he was not going, pulled back his arm, and withdrew toward the wall behind him. When two policemen reached for Gallagher's arms, he clenched his fist and raised it toward officer Hanlon. Hanlon responded by kicking Gallagher in the groin, causing Gallagher to double over. When the officers again seized Gallagher's arms, Carol Gallagher intervened, jumping at officer Hanlon's arm and knocking him to his knees. As officer Hanlon was rising, Gallagher advanced toward him. The officer struck Gallagher in the eye. Carol Gallagher then ran

---

[3] "[General Statutes] Sec. 53a-181. BREACH OF PEACE: CLASS B MISDE-MEANOR. (a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

"(b) Breach of peace is a class B misdemeanor."

The breach of the peace charge was subsequently dismissed.

to another room, and her husband was subdued, handcuffed and placed in a squad car. Carol Gallagher was then arrested for interfering with a police officer. Two more squad cars arrived and both Gallaghers were transported to the police station.

The defendant Richard Gallagher makes two claims on his appeal: (1) that his arrest was unlawful and (2) that the trial court erred in failing to instruct the jury that the unlawfulness of officer Hanlon's entry was a defense to the charges against him.

The claim of unlawful arrest is itself in two parts. It is based, first, on the United States Supreme Court's holding in *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), that the "Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."[4] (Citations omitted.) Id., 576; see *State* v. *Guertin,* 190 Conn. 440, 446, 461 A.2d 963 (1983). The defendant claims that the consent given to officer Hanlon's entry was not voluntary because it was procured as a result of Hanlon's deliberate concealment of his intention to arrest Richard Gallagher. Since the consent was involuntary, it was invalid. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Absent valid consent, and absent any claim by the state that the warrantless entry was the product of exigent circumstances, it follows, according to the defendant, that officer Hanlon's entry and the defendant's arrest violated the fourth amendment. See *State* v. *Zindros,* 189 Conn. 228, 237, 456 A.2d 288 (1983).

---

[4] Although we do not reach the merits of the defendant's claim, we agree with the defendant's implicit assumption, conceded by the state, that *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), applies to misdemeanor as well as felony arrests.

The claim of unlawful arrest is based, second, on an alleged violation of General Statutes § 54-1f (a), which provides, in relevant part: "Peace officers . . . in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others." The defendant argues, citing *Sims* v. *Smith,* 115 Conn. 279, 283, 161 A.239 (1932), that arrests are permitted by this statute only where there is no opportunity to obtain an arrest warrant. The defendant avers that the state had an ample opportunity to obtain a warrant for Richard Gallagher's arrest on the breach of the peace charge.

We do not reach the merits of these claims. Even if we were to consider them and resolve them in the defendant's favor, such a determination would not invalidate the convictions. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States* v. *Crews,* 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); see *State* v. *Haskins,* 188 Conn. 432, 442, 450 A.2d 828 (1982). The remedy for an unlawful arrest is the suppression of evidence obtained thereby. *United States* v. *Crews,* supra. We observe that the defendant has made no claim, either at trial or on appeal, that any evidence adduced at trial should have been suppressed.

We have recognized, however, that under certain circumstances an unlawful arrest entitles a defendant to dismissal of the charges against him. Where the affidavit underlying a bench warrant does not support a finding of probable cause; *State* v. *Iasevoli,* 188 Conn. 325, 331–32, 449 A.2d 996 (1982); *State* v. *Saidel,* 159 Conn. 96, 99–100, 267 A.2d 449 (1970); or where the

bench warrant is based on facts unsupported by oath or affirmation; *State* v. *Licari,* 153 Conn. 127, 129, 214 A.2d 900 (1965); "an attack seasonably made by the accused on the court's jurisdiction of his person and premised on the illegality of the warrant"must prevail. *Reed* v. *Reincke,* 155 Conn. 591, 593, 236 A.2d 909 (1967). The defendant pleaded to the information and the record discloses that he made no attempt prior to judgment to challenge the lawfulness of his arrest. Under these circumstances, and in the absence of any mitigating factor, we conclude that any claimed defect in the court's jurisdiction was waived. *State* v. *Saia,* 172 Conn. 37, 40–41, 372 A.2d 144 (1976); *State* v. *Tropiano,* 158 Conn. 412, 430–31, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970).

Accordingly, we turn to the defendant's claim that the trial court erred in its instructions to the jury regarding the crime of interference with a police officer. The defendant proposed two jury instructions which were rejected by the trial court.[5] Although parts of these proposed instructions, as the defendant has conceded, were artlessly drafted, their unmistakable import was that the unlawfulness of officer Hanlon's entry constituted a defense to interfering with a police

---

[5] The defendant proposed the following instructions: "(a) The crimes which the defendants are charged with are misdemeanors and not felonies. Therefore, if you find that Officer Hanlon did not have probable cause to make an arrest and formulated a definite intention of arresting the defendants, he was required to seek a warrant before making the arrest. Furthermore, for Officer Hanlon to make a warrantless arrest in the home of the defendants, absent exigent circumstances, is a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States."

"(b) Proof that the officers entered the home of the defendants legally is an essential element of the State's case. If the entry by the officers into the home of the defendants was illegal they were not performing their duties, and the defendants cannot be found guilty of interfering for the reason that any interference under those circumstances would not have occurred while the officers were in the performance of their duties."

officer, and that therefore the question of that unlawfulness should have been submitted to the jury. Regarding the lawfulness of the officer's conduct, the court charged, quoting General Statutes § 53a-23: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal." The defendant contends that the trial court's failure to instruct the jury as he requested, when conjoined with the reading of General Statutes § 53a-23, had the effect of removing from the consideration of the jury the issue of unlawful entry. Because we agree with this contention, it becomes necessary to determine whether the unlawfulness of the entry could, as the defendant urges, constitute a defense to the charge.

At common law, reasonable resistance to an unlawful arrest was privileged conduct. See *United States* v. *Di Re,* 332 U.S. 581, 594, 68 S. Ct. 222, 92 L. Ed. 210 (1948); *John Bad Elk* v. *United States,* 177 U.S. 529, 20 S. Ct. 729, 44 L. Ed. 874 (1900); *State* v. *Amara,* 152 Conn. 296, 299, 206 A.2d 438 (1964); Model Penal Code § 242.2, comment 4 (1980); LaFave, Search and Seizure (1978) § 1.11; Chevigny, "The Right to Resist an Unlawful Arrest," 78 Yale L.J. 1128, 1129 (1969). Coupling an unlawful arrest with an unlawful entry adds to the seriousness of the governmental intrusion because of the recognized privacy interest that attaches to a private home. In such circumstances, it is reasonable to view the governmental intrusion as especially provocative and a defendant's resistance to entry and arrest as excusable and therefore privileged. Courts therefore have recognized a greater privilege to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place. See *United States* v. *Ferrone,* 438 F.2d 381, 390 n.19 (3d Cir.), cert. denied, 402 U.S. 1008, 91 S. Ct. 2188, 29 L. Ed. 2d 430 (1971);

*State* v. *Cesero,* 146 Conn. 375, 379, 151 A.2d 338 (1959); *White* v. *Morris,* 345 So. 2d 461, 467 (La. 1977); *Pettis* v. *State,* 209 Miss. 726, 730–31, 48 So. 2d 355 (1950); *Masden* v. *State,* 156 Tex. Crim. 538, 244 S.W.2d 228 (1951); *State* v. *Hooker,* 17 Vt. 658, 672 (1845); LaFave, supra, p. 217; Chevigny, supra, 1142.

In recent years, state legislation has tended to abrogate the right to resist an unlawful arrest. E.g., Cal. Penal Code § 843a (West Sup. 1968); Fla. Stat. Ann. §776.051 (1) (West 1976); Tex. Penal Code Ann. § 38.03 (a), (b); see discussion in *State* v. *Thomas,* 262 N.W.2d 607, 610–11 (Iowa 1978). Thus, in *State* v. *Concaugh,* 170 Conn. 95, 99, 365 A.2d 395 (1976), we observed that General Statutes § 53a-23; see text, supra; "can only be read as abrogating the common-law rule established in this state in cases such as *State* v. *Amara,* 152 Conn. 296, 299, 206 A.2d 438 [1964] and *State* v. *Engle,* 115 Conn. 638, 648, 162 A. 922 [1932], that a person may resist an illegal arrest." Id.

Neither General Statutes § 53a-23 nor *State* v. *Concaugh* purport, however, to abrogate the privilege to resist an unlawful entry. Nor can our statute be said to have repealed the privilege by implication, in light of the requirement of strict construction of penal statutes which are in derogation of the common law. *State* v. *Kish,* 186 Conn. 757, 765, 443 A.2d 1274 (1982); *McKinley* v. *Musshorn,* 185 Conn. 616, 621, 441 A.2d 600 (1981); *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981).

Concededly, courts in many states have not waited for statutory reform before abrogating the right to resist an unlawful arrest. E.g., *Miller* v. *State,* 462 P.2d 421, 426–27 (Alaska 1969); *State* v. *Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), cert. denied, 414 U.S. 1163, 94 S. Ct. 928, 39 L. Ed. 2d 117 (1974); *Columbus*

v. *Fraley,* 41 Ohio St. 2d 173, 178–80, 324 N.E.2d 735, cert. denied, 423 U.S. 872, 96 S. Ct. 138, 46 L. Ed. 2d 102 (1975); contra *White* v. *Morris,* supra, 466. The arguments in favor of such an approach are, essentially: (a) the development of modern remedies to unlawful arrests such as bail and the exclusionary rule renders the right to resist anachronistic; and (b) the fact that peace officers nowadays are typically armed with lethal weapons renders resistance intolerably dangerous, especially to the arrestee. See, e.g., *United States* v. *Ferrone,* supra, 390; *State* v. *Hatton,* 116 Ariz. 142, 147–48, 568 P.2d 1040 (1977); *People* v. *Curtis,* 70 Cal. 2d 347, 353–54, 450 P.2d 33, 74 Cal. Rptr. 713 (1969); Model Penal Code § 3.04, comment 2 (Tent. Draft No. 8, 1958).[6]

We recognize that these arguments apply in some measure to resistance to an unlawful entry. While they reinforce the policy that private resistance to governmental action is to be discouraged, they cannot totally negate the contrary rule. We will continue to adhere to the common law view that there are circumstances where unlawful warrantless intrusion into the home creates a privilege to resist, and that punishment of such resistance is therefore improper. See Chevigny, supra, 1133–34, 1142; see also *United States* v. *Ferrone,* supra, 390 n.19.

---

[6] Model Penal Code § 3.04 (2) (a) (i), which resembles General Statutes § 53a-23, provides: "The use of force is not justifiable . . . to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful . . . ." It should be noted that the provision "has no application when the actor apprehends bodily injury, as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no peril greater than arrest if he submits to the assertion of authority." § 3.04, comment 2 (Tent. Draft No. 8, 1958) It should also be noted that while it rejects, as a defense to assault, the common law privilege of self-help, the Model Penal Code decriminalizes resistance, without more, to an unlawful arrest. Model Penal Code § 242.2, comment 4, p. 217 (1980).

The United States Supreme Court's 1980 decision in *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), exemplifies the sharp distinction drawn by modern fourth amendment jurisprudence between the relative intrusiveness of arrests effected in the street and those occurring in the home. Id., 587. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Id., 585, quoting *United States* v. *United States District Court,* 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972). We do not suggest that *Payton* recognizes a constitutional right to resist unlawful warrantless entry. Rather, we infer from *Payton* the continuing vitality of that expectation of privacy in the home which underlies the common law right, because the more patently unlawful the intrusion, the more excusable the resistance becomes. Accordingly, at least with respect to entries made without color of warrant, we have refused to abrogate the common law privilege to offer reasonable resistance, not rising to the level of an assault, to an unlawful entry. See *State* v. *Cesero,* 146 Conn. 375, 379, 151 A.2d 338 (1959); *State* v. *Anonymous (1977–5),* 34 Conn. Sup. 531, 545–47, 375 A.2d 417 (1977).[7]

---

[7] We emphasize that the defendant herein was charged with the offense of interference with a police officer under General Statutes § 53a-167a, and not with assault. It is in the context of a defense to a charge of interference that our case law has countenanced a defense of illegal police conduct. Where the defendant is charged with a different crime, a claim of a right to resist an unlawful arrest might be more difficult to reconcile with General Statutes § 53a-23 which provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal." Accord *United States* v. *Simon,* 409 F.2d 474, 477 (7th Cir.), cert. denied, 396 U.S. 829, 90 S. Ct. 79, 24 L. Ed. 2d 79 (1969); *United States* v. *Heliczer,* 373 F.2d 241, 245 (2d Cir. 1967); *State* v. *Hatton,* 116 Ariz. 142, 148, 568 P.2d 1040 (1977); *State* v. *Thomas,* 262 N.W.2d 607, 609–11 (Iowa 1978).

Recognition of a limited right to resist an unlawful entry as a defense to a charge of interference seems to us to accommodate the competing

Conceding arguendo the availability of the privilege as a defense, the state argues nonetheless that it does not apply in the present case, because the consent to officer Hanlon's entry was voluntary as a matter of law. We disagree. The voluntariness of consent is "a question of fact to be determined from the totality of all the circumstances . . . ." *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248–49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State* v. *Zindros,* 189 Conn. 228, 244, 456 A.2d 288 (1983); *Dotson* v. *Warden,* 175 Conn. 614, 619, 402 A.2d 790 (1978). There was conflicting testimony at trial concerning those statements by officer Hanlon which persuaded the Gallaghers to admit him into their home. Whether the officer's remarks were so deceptive as to vitiate the state's claim of consent was a question of fact for the jury on which the state bore the burden of proof.[8] See *McCall* v. *People,* 623 P.2d 397, 403 (Colo. 1981); *In re Anthony F.,* 293 Md. 146, 152–54, 442 A.2d 975 (1982); *State* v. *Bailey,* 417 A.2d 915, 919 (R.I. 1980).

The state next argues that, even conceding arguendo the illegality of the entry, the defendant's resistance was directed at the arrest, and not the entry. Cf. *State*

claims of the common law and of our statutes. The alternative path of the concurring opinion is troublesome because it relies directly on a case, *State* v. *Cesero,* 146 Conn. 375, 151 A.2d 338 (1959), which antedates § 53a-167a.

[8] We find unpersuasive the state's analogy of *Lewis* v. *United States,* 385 U.S. 206, 211, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966), reh. denied, 386 U.S. 939, 87 S. Ct. 951, 17 L. Ed. 2d 811 (1967), to the present case. In *Lewis,* disguised undercover agents entered a home to purchase narcotics. The Supreme Court upheld the validity of the entry, despite the deceit, noting that a government agent "may accept an invitation to do business and may enter upon the premises *for the very purposes contemplated by the occupant.*" (Emphasis added.) Id. In the present case, the defendant-occupants claim that the purpose contemplated by them was to cooperate in an investigation, not in an unanticipated arrest of the defendant Richard Gallagher. Accord *State* v. *Bailey,* 417 A.2d 915, 918 n.3 (R.I. 1980); see LaFave, Search and Seizure (1978) § 8.2 (m), pp. 680–84.

v. *Anonymous (1977–5),* supra. We cannot so conclude. Again, whether the defendant's conduct was an excusable response to an unlawful entry was a question for the jury. Where entry is gained through trickery, it is unlikely that resistance will commence, if it is to commence at all, simultaneously with the entry. In the present case, resistance commenced upon the attempt to arrest. Under the defendant's version of the facts, of course, it was the attempt to arrest which triggered the belated recognition of the police officer's true purpose in obtaining entry. As such, we are unable to conclude, as a matter of law, that the resistance was not directed at the entry itself. It was therefore error for the trial court not to instruct the jury concerning the defense of reasonable resistance to an unlawful entry.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion SPEZIALE, C. J., HEALEY and PARSKEY, Js., concurred.

SHEA, J. (concurring). I agree with the result reached by the majority opinion, which vacates the judgment and orders a new trial. I would not, however, reach the issue of whether there remains in this state a common law right to use reasonable force to resist an unlawful entry into a home for the purpose of making an arrest. The defendant has never claimed any such privilege, either in the trial court or before us on appeal, and we do not ordinarily decide questions not properly raised. Practice Book §§ 3063, 3060F. Contrary to the assumption of the majority, neither of the two requests to charge[1] presented by the defendant can fairly be read to have alerted the trial court to such a claim. The first request pertains to the necessity of obtaining a warrant before arresting the defendant in his home in the absence of exigent circumstances. The second request,

---

[1] See footnote 5 of the majority opinion.

based upon *State* v. *Anonymous (1977–5)*, 34 Conn. Sup. 531, 547, 375 A.2d 417 (1977), states that if the officers had entered their home illegally, the defendants could not be found guilty of interfering with them for the reason that interference under such circumstances would not have occurred while the officers were in the performance of their duties.

I would follow our precedents that an officer is not in the performance of his duties, as required by General Statutes § 53a-167a for the offense of interference with a police officer, when he is acting illegally. *State* v. *Cesero*, 146 Conn. 375, 379, 151 A.2d 338 (1959); *State* v. *Anonymous (1977–5)*, supra, 547. This interpretation of § 53a-167a would preclude a conviction for violating that statute of a defendant who "obstructs, resists, hinders or endangers" an officer but would not bar a conviction for an assault or other violent crime committed upon an officer which has been charged. Section 53a-167a does not require the use of force upon an officer to support a conviction for interference but applies even to nonviolent forms of resistance. It is not, therefore, inconsistent with the prohibition of General Statutes § 53a-23 against "using physical force to resist an arrest" to allow those whose resistance to an illegal arrest takes a peaceful form to avail themselves of the defense that the officer was acting illegally and was not, consequently, in the performance of his duties. *State* v. *Anonymous (1977–5)*, supra, 547. Because it was error for the trial court not to charge as requested that the police officers were not in the performance of their duty if they were acting illegally, I concur in the result.

The recognition by the majority of a right to use reasonable force to resist an illegal entry, as a surviving vestige of the common law right to oppose an illegal arrest which General Statutes § 53a-23 has eliminated, can be reconciled with the letter of that

statute but not its policy. The persuasive reasons given by the majority for the abrogation of the common law rule apply with equal force to the use of violence to prevent an illegal entry. Where violence may be involved, modern society prefers the courtroom to the street or the home as the arena for determination of the legality of police conduct. We should, therefore, discourage violent conduct in the household as well as in public places which may expose to serious injury peace officers as well as those they seek to arrest. In sanctioning the use of a vaguely defined "reasonable force" to protect home and hearth, the majority opinion appears[2] to make the defense of the illegality of police conduct available for many violent crimes which may be perpetrated upon an officer whose judgment is later found to be erroneous.

---

[2] In footnote 7, the majority opinion seems to narrow the scope of the right to use reasonable force to resist an illegal entry to the charge of interference with a police officer in violation of General Statutes § 53a-167a and suggests that "[w]here the defendant is charged with a different crime, a claim of a right to resist an unlawful arrest might be more difficult to reconcile with General Statutes § 53a-23 . . . ." Such a restriction on the availability of the defense of resisting an illegal entry would achieve the same result as that advocated in this concurring opinion. Since the broader language of the majority opinion itself has not been modified to reflect the limitation implied by the footnote, I assume the majority have not retreated from their recognition of a common law right to use reasonable force to resist an unlawful entry as a possible defense to a violent crime.