STATE of Iowa, Appellee,

v.

Pete FOLKENS, Appellant.

No. 62334.

Supreme Court of Iowa.

June 27, 1979.

Rehearing Denied July 20, 1979.

**2**

Thomas O. Albers of Fisher, DeWaay & Albers, Rock Rapids, for appellant.

Thomas J. Miller, Atty. Gen., and Faison T. Sessoms, Jr., Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This defendant appeals from his conviction of assault with intent to commit rape, in violation of section 698.4, The Code. The issues raised are (1) the legality of the search for and seizure of certain evidence; (2) admissibility of evidence of other similar acts by defendant; (3) whether defendant was denied his right of confrontation as to one witness; (4) whether the court erred in refusing to order the return of a witness for additional testimony; (5) whether the failure of the prosecution to disclose exculpatory evidence until the day of trial deprived him of due process; and (6) whether the court erred in refusing defendant's request to be sentenced under the provisions of the 1977 supplement to The Code. We affirm the trial court on each of the issues raised.

Janine Sprock, the victim, was the daughter of a woman who was living with the defendant. On June 17, her mother was confined to a hospital in Iowa City. While her mother was hospitalized, Janine was required to sleep downstairs in order that she could hear the alarm and wake Folkens for work. Janine slept in what was usually her mother's and Folkens' bed. In the beginning, Folkens slept on the couch. About a week later, he began sleeping in the same bed with Janine and making advances toward her. According to the state's evidence, on July 3 Folkens attempted to have sexual intercourse with Janine but could not penetrate her; on July 4 he penetrated her but did not complete the intercourse; and on July 5 he succeeded in having intercourse with Janine.

I. *The search and seizure.* On July 6, Janine informed her older sister what had transpired. They reported the events to the police chief who then arrested the defendant. The chief accompanied Janine and her older sister to the house where she pointed out to him certain evidence of the crime. He then obtained a warrant and returned to search the house and seize certain of the items of evidence, including bedding and clothing. The state does not dispute the fact the first visit in the house constituted a search. An illegal warrant-

less search will vitiate the legality of a subsequent seizure pursuant to a warrant if the initial entry influenced the obtaining of the warrant. *State v. Smith*, 178 N.W.2d 329, 333 (Iowa 1970); *State v. Hagen*, 258 Iowa 196, 205, 137 N.W.2d 895, 900 (1965). *See also Zacek v. Brewer*, 241 N.W.2d 41 (Iowa 1976). To establish this influence, Folkens notes that the police chief mentioned several of the items that he saw during the visit in his affidavit to secure the search warrant. Since none of the items are mentioned in Janine's written statement, it is argued that knowledge of their existence could only have come from the visit. The state contends, however, that even though the first visit to the home was in fact a warrantless search, it was made legal by Janine's consent.

In analyzing the validity of a consent search, two questions must be addressed: first, did Janine have authority to consent; second, was her consent voluntary? *Bettuo v. Pelton*, 260 N.W.2d 423, 425 (Iowa 1977). Because we are dealing with a right of constitutional dimension, "[o]ur review is de novo consisting of an independent evaluation of the relevant circumstances in their entirety." *State v. Jones*, 274 N.W.2d 273, 275 (Iowa 1979) (the "totality of the circumstances" test); *Bettuo*, 260 N.W.2d at 425.

█ The validity of consent searches stems from the fact that the protection of the Fourth Amendment only extends to the "right . . . to be secure . . . against *unreasonable* searches and seizures . . . ." Warrantless searches are per se unreasonable unless one of three exceptions are present: (1) the search is incident to an arrest; (2) the search is consented to; or (3) exigent circumstances require an immediate search. *Bettuo*, 260 N.W.2d at 425, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

█ When consent is relied upon as an exception to the warrant requirement, we have said it must be established by clear and convincing evidence. *See, e.g., State v. Ahern*, 227 N.W.2d 164, 166 (Iowa 1975) and cases cited. Subsequent to *Ahern* the United States Supreme Court held that ex-

ceptions to the requirement of a search warrant require only a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996, 39 L.Ed.2d 242, 253 (1974), and we followed that case in *Bettuo*, 260 N.W.2d at 425. Despite the language of our earlier cases imposing the higher standard of proof, we hold that a preponderance of the evidence by the state is sufficient to establish exceptions, including consent, to the "per se unreasonable" status of a warrantless search.

We conclude the evidence in this case did show valid consent to the search by a preponderance of the evidence.

Defendant contends Janine, who was 14 years old at the time, lacked authority to consent to the search. *Matlock* discussed consents to search given by third parties, stating that

the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

415 U.S. at 170–171, 94 S.Ct. at 993, 39 L.Ed.2d at 249. A footnote to that statement said:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one

of their number might permit the common area to be searched.

The defendant contends the consent here "waived" defendant's right to be secure from unreasonable searches. The issue, however, is not waiver of another's rights, but whether the consenting person had authority to grant consent in his own right. As stated in *Commonwealth v. Rhoads*, 225 Pa.Super. 208, 212, 310 A.2d 406, 409 (Pa. Super.Ct.1973):

> In determining whether evidence obtained from a search consented to by one person can be used against another, the question is whether the person granting the consent had sufficient control over the premises to grant consent in his own right. The question is not whether the consenting person had the power to waive another's constitutional rights. *Commonwealth ex rel. Cabey v. Rundle*, 432 Pa. 466, 248 A.2d 197 (1968).

■ The issue here is whether fourteen-year old Janine had common authority over the premises searched to allow a search in her own right. As a resident of the house, she had a certain amount of authority over the premises. Further, in her mother's absence she was given a key to the house and was expected to do the shopping, cooking and laundry. The area searched was the bedroom which she had been using for the past several weeks. This gave her sufficient authority to consent to a search of it. Sharing a bedroom has been grounds for denying many defendants' assertions that a third party did not have authority to consent to a search of the bedroom. *See e.g., People v. Wood*, 31 N.Y.2d 975, 976, 341 N.Y.S.2d 310, 311, 293 N.E.2d 559, 560, (1973); *People v. Daniels*, 16 Cal.App.3d 36, 44, 93 Cal.Rptr. 876, 878 (Ct.App.1970).

■ The minority of the consenting party does not in itself vitiate the consent, but does bear on the voluntariness of it. In *Gregoire v. Henderson*, 302 F.Supp. 1402, 1407 (E.D.La.1969), the court said:

> counsel relied entirely upon the allegation that he [William] was too young to give legal consent. Search as we may, we are unable to find any authority to support the proposition that a seventeen year old boy cannot, as a matter of law, give consent for a search of the premises in which he lives with his family. The age of the boy should, of course, be considered by the trier of fact to be one factor in determining whether or not consent was freely given.

See also *Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285, 1286–1287 (1972). In *Davis v. United States*, 327 F.2d 301, 302 (9th Cir. 1964), the court discussed a factual setting in which three narcotics officers knocked at defendant's door. An eight-year old daughter admitted them to the home. The court noted, as to her authority to consent to the search:

> When the defendant was on the stand, he made no claim that Pamela's actions in opening the door or inviting the men in was in any way unusual or unauthorized, nor did Pamela testify that the opening of the door or telling the officers to come in was against the instructions of either of her parents. From all the evidence before it, the trial court was entitled to conclude then that her opening the door and invitation to enter were not unusual or unexpected or unauthorized acts.

■ Defendant also claims Janine was not aware that she could refuse to allow a search. Such lack of knowledge, however, is not a prerequisite to establishing a voluntary consent; it is merely a factor in determining its voluntariness. *State v. Ege*, 274 N.W.2d 350, 353 (Iowa 1979), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854, 862–863 (1973). We conclude her consent was voluntary here despite her lack of knowledge. This argument lacks persuasiveness under these facts, in any event, because it is not a defendant or one seeking to protect his interests who has given the consent, but one who is herself the victim of the alleged crime.

■ We conclude that the officer's original entry of the house and seizure of the evidence were validly consented to and the legality of the warrant subsequently obtained need not, therefore, be determined by us.

██ II. *Other acts.* Folkens was charged with only one count of sexual abuse, arising out the events of the night of July 5–6. However, at trial evidence of his actions on the two previous nights was received as well. Defendant argues that this was in contravention of the rule that evidence of crimes other than the one charged is inadmissible. This rule, and the recognized exceptions to it, are discussed in *State v. Powell*, 256 N.W.2d 235, 237 (Iowa 1977), where we said:

> Evidence of a separate crime is inadmissible as bearing on a defendant's guilt unless it falls within the established exceptions. The recognized exceptions permit reception of evidence of other crimes to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, (5) identity of the person charged with the commission of the crime. The basic principle involved is relevancy; if the evidence tends to prove some fact relative to the crime for which defendant is now tried it is properly received even though another offense is thereby necessarily established. Otherwise it should not be admitted. *State v. Jeffs*, 246 N.W.2d 913, 915 (Iowa 1976) and authorities.

We have held that evidence of similar acts is admissible. *See, e.g., State v. Maestas*, 224 N.W.2d 248, 250–251 (Iowa 1974) (lascivious acts case); *State v. Kinkade*, 241 Iowa 1259, 1261–1262, 43 N.W.2d 736, 738 (1950) (same). The rationale, as stated in *Maestas*, is that such similar acts show a common scheme, and a "lascivious and lewd disposition." 224 N.W.2d at 250–251. Similar acts are particularly relevant where committed with the same prosecuting witness. *Id.* at 250. We hold the trial court properly admitted evidence of the prior acts of defendant.

██ III. *Confrontation of the witness.* The defendant's counsel scheduled depositions to be taken of the children in his office library. The prosecutor was present. Before the depositions were taken, defense counsel was in another room with the defendant. When the children entered the office they were met by their mother who informed them that the defendant had threatened to kill them if they didn't drop the charges. This came to the attention of the attorneys for the state who had a stenographer take down a statement from Mrs. Folkens concerning this incident. Defense counsel came in during the middle of the statement and objected to what was going on outside of his and his client's presence.

At trial, upon defendant's motion in limine, the state was precluded from mentioning the out-of-court statement in voir dire of the jury panel, opening statements, or the state's case in chief. The court reserved ruling on whether it could be referred to in cross-examination of the mother by the state. Upon her later cross-examination, she denied any recollection of the prior statement. She was then requested by the prosecuting attorney to read excerpts from it to the jury. Defendant claims this violated his sixth amendment right of confrontation, because he was not allowed to be present at the taking of the statement.

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the defendant was accused of furnishing marijuana to a 16-year old minor who, in turn, had sold it to an undercover agent. The minor, while in juvenile custody and later at defendant's preliminary hearing, named him as his supplier. The minor was cross-examined at the preliminary hearing by defendant's attorney but not at the time he gave his earlier statement. At trial, the minor was "evasive and uncooperative." His earlier statements were used to refresh his recollection, and excerpts from them were admitted for the truth of the matter contained therein under a California statute permitting it. The California District Court of Appeal reversed his conviction holding that admitting the statements for the truth of the matters contained violated his right of confrontation, and the Califor-

nia Supreme Court affirmed holding the California statute to be unconstitutional.

The United States Supreme Court vacated the California judgment and remanded holding that the statute in question, which was in effect a legislative modification of the hearsay rule, was nevertheless compatible with the defendant's constitutional right of confrontation. This is true, even though the out-of-court declarant was not subject to cross-examination at the time, provided he is subject to cross-examination at trial. The court said:

> [T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial. The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant. We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement.

*Green*, 399 U.S. at 159, 90 S.Ct. at 1935, 26 L.Ed.2d at 497.

We conclude that the use of this prior statement was properly allowed for impeachment of this witness, who was present in court and subject to cross-examination on it.

IV. *Recalling witness.* After the incident involving Janine, she went to live with a sister in Minnesota. After she testified, she returned to Minnesota. The night after she left, her mother brought two of her earlier letters to the attention of defendant's attorney, who thought they could be used to impeach her. He sought permission to recall Janine. The court indicated it would allow her to be recalled but that there was nothing it could do to require her attendance. Defendant's attorney sought the assistance of the county attorney's office in securing her attendance, but this was refused. Despite defendant's claim that the state "removed" the witness from the state, there was no evidence to support it.

Recalling a witness is largely in the discretion of the trial court. *State v. Hall*, 235 N.W.2d 702, 724 (Iowa 1975). Her letter which prompted the effort to recall Janine merely stated that her sister's boyfriend in Minnesota had offended her and that she would have him "sitting in jail for child abuse" if he continued to hit her as she claimed. Defendant sought to further cross-examine Janine in regard to the matter, even though it did not involve the defendant, apparently to show Janine was disposed to settle family disputes by using the courts. Despite defendant's claim it was "newly discovered evidence", he has failed to show (1) that the evidence could not have been discovered earlier in the exercise of due diligence, (2) that it was material, not merely impeaching, and (3) that it would probably change the result of the trial. See *State v. Sims*, 239 N.W.2d 550, 554 (Iowa 1976) (postconviction relief case). The letter was in the possession of Mrs. Folkens at all times during the trial and could have been obtained in time to cross-examine Janine. It was, at the most, merely impeaching in nature, thus failing the second *Sims* test. In addition, we conclude this evidence was of virtually no probative value, and it is not shown that its use at trial would have changed the result. Defendant has therefore failed to establish error under his newly discovered evidence reasoning, and has failed to show any evidence of intentional withholding of the witness. We conclude this issue was properly resolved in the trial court.

V. *Exculpatory evidence.* The evidence recovered from the search of the house included clothing, bedding and a chair cushion which had blood and semen on them. Due to Betty Folkens' cervical cancer, she was constantly menstruating; therefore, the bedding and a mattress cover had many blood stains. Apparently the

only blood stain capable of blood typing was on the mattress cover. The typing test showed that that blood stain was not of the same type as the victim's. The prosecution did not know that until a few days before trial. The information was conveyed to the defendant's attorney on the morning of trial. The defendant claims that the failure to disclose this exculpatory material sooner violated due process, as applied by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In *State v. Epperson*, 264 N.W.2d 753 (Iowa 1978), the defendant claimed the state had failed to disclose exculpatory evidence in the form of prior statements by prosecution witnesses. Defense counsel examined the prosecutor's file, but these statements were not contained in it, for some reason not explained. Defense counsel was later advised of the earlier statements but was not actually furnished copies of them until after they had testified at trial on direct examination. We said that:

> Because the statements were furnished to defense counsel for use during trial, this is not a case in which the State suppressed exculpatory evidence by failing to produce it at all. If suppression occurred here, it happened through the prosecutor's failure to produce the statements as soon as defendant contends he should have.

> The statements were produced at the time our cases have said due process demands they be produced. [cases cited] Therefore we do not have a problem involving alleged suppression of materially exculpatory evidence within the meaning of *Brady v. Maryland*, . . ..

The disclosure was timely under *Epperson*; we find no denial of due process under this issue.

■ VI. *Sentencing.* Defendant was sentenced under section 698.4, The Code (1977), despite his request to be sentenced under the less harsh provisions of the new criminal code. We have recently faced this issue and resolved it adversely to defendant. *State v. Bousman*, 278 N.W.2d 15, 17 (Iowa 1979). The court must approve such request, and it refused to do so here.

The remaining issue raised on defendant's appeal, the court's refusal to allow introduction of Janine's letter discussed in Division IV, was withdrawn on oral submission.

AFFIRMED.