# IN RE: ANTHONY F.

[No. 91, September Term, 1981.]

*Decided March 23, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alice G. Pinderhughes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

Digges, J., delivered the opinion of the Court.

On September 4, 1980, the petitioner, fifteen year old Anthony F., was adjudged delinquent by the District Court of Maryland in Montgomery County based on his having committed several burglaries. The petitioner challenges on appeal this finding on the ground that the trial judge erred by denying a motion to suppress a confession he made at the police station shortly after his arrest. In so doing, the juvenile asserts that the statement was tainted because he was illegally arrested in his home by police officers who entered the dwelling without an arrest warrant in reliance upon an invalid consent given by his sister. As we find that the trial judge properly ruled both that the sister had authority to permit entry of the police into the home and that her exercise of that authority was voluntary, we shall affirm.

The facts surrounding the arrest and confession of Anthony F. we extract from an agreed statement submitted by the parties. On January 19, 1980, two officers of the Montgomery County Police Department received information that the petitioner was involved in a number of recent local burglaries. After gathering other evidence which corroborated these tips, the officers, one dressed in plainclothes and the other in uniform, proceeded without a warrant to Anthony's home for the purpose of arresting him.[1] The policemen testified that upon knocking at the residence, the front door was opened by a young girl who appeared to them to be thirteen years of age (although she was actually sixteen) and who identified herself as the suspect's sister. Both officers, while standing outside, immediately revealed their respective names and official capacities to the girl. Upon inquiring as to whether the mother was at home, the young lady responded that her parent was out performing errands. The police then asked if Anthony F. was in the house, and she replied that he was upstairs asleep. At this point, the officers requested permission to enter the home and "talk to" Anthony. The sister

---

1. Petitioner does not assert that the police were without sufficient probable cause to make the arrest.

responded by stepping back and opening the door wide so they could enter. Immediately upon admission, the policemen paused in the living room and requested of the young lady that she go upstairs and ask her younger brother to come down; the officers remained in the living room while the sister complied. When she returned and announced that her brother would be down shortly, the police advised the girl that they were going to arrest Anthony, informed her as to where they would be taking him, and requested her to tell the mother of these facts when she returned.[2] Several minutes later, the petitioner came downstairs to the living room and was placed under arrest. Shortly after being taken to the police station, Anthony made a statement admitting his involvement in three break-ins with which he was subsequently charged in delinquency petitions.

The petitioner moved to suppress this confession. Following a hearing on this motion, the judge evaluated the unrefuted testimony of the officers and factually determined that Anthony's sister not only possessed sufficient authority to permit the police to enter the living room, but also that her consent to the entry was voluntarily given. Consequently, the judge denied the motion to suppress. The Court of Special Appeals affirmed and we granted certiorari.

In presenting the issues to this Court, the parties direct our attention to the recent twin United States Supreme Court cases of *Payton v. New York* and *Riddick v. New York,* both reported at 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where it was held that:

> [T]he Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment ... prohibits the police from making a warrantless and noncensensual entry into a suspect's home in order to make a routine felony arrest. [455 U.S. at 576, 100 S.Ct. at 1373 (citations omitted).]

---

**2.** The record discloses that the mother received this message because shortly after petitioner was arrested she appeared at the police station where he was being detained.

Although the High Court in *Payton* and *Riddick* invalidated two warrantless arrests, it made clear that "both cases [dealt] with entries into homes made without the consent of any occupant." *Id.*, at 583, 100 S.Ct. at 1378.[3] The parties in this case agree that the sister ostensibly consented to the police entry. Nevertheless, petitioner asserts that his sister's consent was invalid for two reasons: first, she had no authority to invite the officers into the home, and second, if the sister had such authority, her consent was not voluntarily given. We shall commence by discussing the first of these two points.[4]

The leading case on the authority of a third party to consent to police entry into a defendant's dwelling is *U.S. v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock,* a woman who was cohabitating with the defendant in her parents' leased premises voluntarily consented to a request by the police for permission to search the dwelling, including the bedroom she shared with the defendant. In finding this consent valid against the defendant, Justice White for the Supreme Court noted:

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. [*Id.*, at 171, 94 S.Ct. at 993.]

In an accompanying footnote, Justice White further elaborated on the concept of authority to consent:

---

3. In *Payton,* the police used crowbars to break down the door, and in *Riddick,* although a three year old answered the door, the police entered before the defendant had an opportunity either to object or consent. Payton v. New York, 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639, (1980).

4. Since the Fourth Amendment standards apply equally to seizures of property as to seizures of persons, Payton v. New York, supra at 590, 100 S.Ct. at 1386, 63 L.Ed.2d at 653, we utilize as precedent those cases involving warrantless consensual searches under the Fourth Amendment in order to aid in our determination of the validity of the arrest here.

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. [*Id.* at 171, n.7, 94 S.Ct. at 993.]

Based on our careful examination of the evidence presented at the suppression hearing, we find ample support in the record for the trial judge's determination that the petitioner's sister possessed sufficient authority to allow the officers to enter the living room of the home.[5] The young lady, a year older than her brother, was the only person other than the petitioner in the dwelling where the mother and her two teenage children resided when the police officers knocked on their front door. No evidence was produced at the suppression hearing to indicate that the girl's mother had instructed her not to open the door for anyone, or had placed either of the children, to the exclusion of the other, in charge of the premises. Certainly, in today's world it is not unusual that teenage children are left in control of the family abode when the parents are away. Thus, we believe it permissible for the trial judge to draw the inference he did that the daughter possessed authority to allow the officers to stand just inside the front door while waiting for petitioner's response to their request that he come down from his bedroom. This conclusion in no way carves out a new path in

---

**5.** As there was enough evidence to support the inference that the petitioner's sister possessed actual authority to admit the officers, we need not pass on the question of whether apparent authority alone suffices to uphold a warrantless arrest in the home under the Fourth Amendment. For an excellent discussion of the theories and case law on this issue see 2 W. LaFave, *Search and Seizure,* §§ 8.3 et seq. (1978).

Maryland law, for this Court, as well as the Court of Special Appeals, has recognized on numerous occasions that third party consent of one possessing common authority over premises will justify a warrantless entry into the dwelling. *Nestor v. State,* 243 Md. 438, 221 A.2d 364 (1966); *McCray v. State,* 236 Md. 9, 202 A.2d 320 (1964); *Bellam v. State,* 233 Md. 368, 196 A.2d 891 (1964); *Collins v. State,* 39 Md.App. 165, 384 A.2d 120 (1978); *Tate and Hall v. State,* 32 Md.App. 613, 363 A.2d 622 (1976); *Jones v. State,* 13 Md.App. 309, 283 A.2d 184 (1971), *cert. denied,* 264 Md. 749 (1972). Other jurisdictions have also recognized this principle. *E.g., U.S. v. Block,* 590 F.2d 535 (4th Cir. 1978); *U.S. v. Dubrofsky,* 581 F.2d 208 (9th Cir. 1978); *U.S. v. Gulma,* 563 F.2d 386 (9th Cir. 1977); *U.S. v. Green,* 523 F.2d 968 (9th Cir. 1975); *People v. Van Brunt,* 104 N.Y.Misc.2d 97, 427 N.Y.S.2d 712 (1980); *State v. Folkens,* 281 N.W.2d 1 (Iowa 1979); *State v. Grandmaison,* 327 A.2d 868 (Me. 1974); *Commonwealth v. Rhoads,* 225 Pa.Super. 208, 310 A.2d 406 (1973); *Mills v. Delaware,* 287 A.2d 656 (Del. 1972); *Villine v. U.S.,* 297 A.2d 785 (D.C.App. 1972).

Moreover, based on *Matlock,* we find no validity in petitioner's argument that since the two officers knew he was present in the house they should have sought his consent before entering. *U.S. v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (even though the defendant was present, permission to search was obtained from his girlfriend; in determining that there was valid consent, Supreme Court focused on whether the third party possessed "common authority" over the dwelling, rather than on the defendant's presence or absence). *See, U.S. v. Sumlin,* 567 F.2d 684, 687-88 (6th Cir. 1977); *U.S. v. Canada,* 527 F.2d 1374, 1379 (9th Cir. 1975). In addition, there is no merit to petitioner's assertion that a sister cannot agree to an entry into the home on behalf of her brother. Although many of the cases have involved parents consenting on behalf of their children, there is ample precedent finding that a sibling ordinarily can possess authority to permit police entry into common areas of the home. *U.S. v. Bethea,* 598 F.2d 331 (4th Cir. 1979); *Shorey v. Warden,* 401 F.2d 474 (4th Cir. 1968); *People v. Swansey,* 62 Ill.App.3d 1015, 379

N.E.2d 1279 (1978); *Peek v. State,* 239 Ga. 422, 238 S.E.2d 12 (1977).

Having determined that the sister possessed authority to admit the police into the living room of the residence, we now examine whether she voluntarily agreed to that entry. Preliminarily, we observe that the State bears the burden of establishing by a preponderance of the evidence that the consent to enter the home was in fact voluntarily given. *Logue v. State,* 282 Md. 625, 630, 386 A.2d 780, 783 (1978); *State v. Wilson,* 279 Md. 189, 201, 367 A.2d 1223, 1231 (1977). Moreover, our duty on appeal is "to make an independent constitutional appraisal" of the record to resolve any question as to the correctness of the trial judge's finding with respect to voluntariness, and in pursuing this obligation, we of course "give great weight to the findings of the judge who ruled on the motion." *Logue v. State, supra,* 282 Md. at 630, 386 A.2d at 784; *State v. Wilson, supra,* 279 Md. at 202, 367 A.2d at 1231.

We have met this responsibility here by scrutinizing the record of the suppression hearing and conclude that the evidence amply supports the trial judge's finding of voluntariness. The two police officers approached the house during daylight hours, and they remained outside the front door at all times until the girl invited them to enter the living room where they stood until petitioner joined them. In fact, the record is completely devoid of testimony that the officers, either by words, actions, or otherwise, engaged in any coercive activities in order to gain entry. The petitioner, in effect, recognizes this. Nevertheless, in reliance principally on *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), he urges that his sister's consent was not voluntary because she was a minor with little experience with the law and its enforcement officers and therefore possessed a natural compulsion to submit to the requests of a figure of governmental authority. Petitioner concedes, however, that age alone is not dispositive of the question of voluntariness. Rather, he agrees, as he must, that age is only one factor for consideration in the "totality of all the circumstances" to be examined when determining

whether a consent was in fact freely given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *see, e.g., Gregoire v. Henderson*, 302 F.Supp. 1402 (E.D.La. 1969); *Doyle v. State*, 633 P.2d 306, 307-09 (Alaska App. 1981); *State v. Folkens*, 281 N.W.2d 1 (Iowa 1979). On this record, as the sister's age was the only element which could in any way tend to affect the voluntary character of her permission (given the officers unrefuted testimony as to what took place), it is plain that the trial judge did not err in concluding that she freely invited the police into her home. In fact, there are numerous decisions in which courts have upheld the third party consent of a minor even younger than the petitioner's sister in this case. *E.g., Murphy v. State*, 355 So.2d 1153 (Ala.Crim.App. 1978) (age twelve); *Doyle v. State*, 633 P.2d 306 (Alaska App. 1981) (age estimated to be between eleven and fourteen); *In Re Robert H.*, 78 Cal.App.3d 894, 144 Cal.Reptr. 565 (1978) (age thirteen); *People v. Swansey*, 62 Ill.App.2d 1015, 379 N.E.2d 1279 (1978) (age thirteen); *State v. Folkens, supra* (age fourteen); *State v. Jones*, 591 P.2d 796 (Wash.App. 1979) (age thirteen).

There is no merit to petitioner's argument that because the police only told the sister that they wanted to "talk to" Anthony, while their full purpose was to arrest him, this constitutes misrepresentation so as to destroy the voluntary character of the permission to enter. Regarding the question of a policeman's modus operandi in obtaining consent, the Supreme Court in *Schneckloth* observed that, "two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent — the legitimate need for such [police entry] and the equally important requirement of assuring the absence of coercion." *Schneckloth v. Bustamonte, supra*, 412 U.S. at 227, 93 S.Ct. at 2048. We do not think that the officers' statement of their purpose in this case in any way undermined the voluntary character of the young lady's consent. They did not mask their official capacities, nor did they misrepresent their purpose for being there. Without being explicit, they stated that they wanted to talk with the brother, and the sister sought no further

elaboration. Certainly, a policeman has a right to execute his lawful function without gratuitously advertising his every move to anyone he might encounter in that pursuit.

Accordingly, we hold that the motion to suppress the petitioner's confession as a product of an illegal arrest was properly denied.

*Judgment affirmed.*
*Costs to be paid by petitioner.*